MARK BOATMAN *et al.*

*v.*

IDA M. BOATMAN.

*Opinion filed October 25, 1902.*

198    414
e203  3350
203   8353
198    414
e208  3514
d208  3517

1. WILLS—*the law favors the vesting of estates.* Estates created by will will be regarded by the courts as vested, rather than contingent, unless a contrary intention is apparent.

2. REMAINDERS—*vested remainder defined.* A vested remainder is an estate to take effect after another estate for years or for life, which is so limited that if that particular estate were to expire at the present time some certain person who is *in esse* and answers the description of the remainder-man would become entitled to immediate possession, irrespective of any collateral contingency.

3. SAME—*when remainder is vested.* A devise of the residue of the testator's property to his eight children, share and share alike, except that the share of one son shall be a life estate only, the remainder in fee to go to any child or children surviving him, or if he left no child or children, then to his brothers and sisters, creates a vested remainder in such brothers and sisters, regardless of the fact that children might thereafter be born to the life tenant and the remainder be thereby divested.

4. SAME—*quit-claim deed will pass vested remainder.* A quit-claim deed is sufficient to transfer to the grantee any vested interest of the grantor of which she was seized at the time of the execution of the deed.

APPEAL from the Circuit Court of Edgar county; the Hon. H. VANSELLAR, Judge, presiding.

This is an appeal from the decree of the circuit court of Edgar county ordering the partition of certain lands according to the prayer of a bill to partition the same, filed by Ida M. Boatman against the appellants.

Reed Boatman died in 1892, leaving a will, which was duly admitted to probate in Edgar county in the same year. He left no widow, and as his only children and heirs-at-law his sons, Mark Boatman, George Boatman, John Boatman, Clarence E. Boatman, Charles A. Boatman and Emory M. Boatman, and his daughters, Clara B. Worsham and Pet Dora Boatman (now Pet Dora Lumpkin). He died seized of the lands described in said bill, amounting to about four hundred acres in Edgar county. The will of Reed Boatman reads as follows:

"I, Reed M. Boatman, of Paris, Edgar county, Illinois, being of sound mind and memory and in reasonable good health, do make this my last will and testament.

"*First*—I desire that all my just debts and funeral expenses be first paid.

"*Second*—I desire to treat my children all alike. I have advanced to and paid for my son George Boatman, money from time to time, which, with five per cent interest, now amounts to about $4000. I have his note for the same, and there is to be no interest on the same after this date, and the amount is to be held at $4000. My said son George Boatman is not to have anything more out of my estate until my other children have each received $4000. My son Emory Boatman has received by moneys paid out for him and given to him the sum of $482, and no interest is to be charged upon that amount after October 1, 1891. Emory is not to have any share of my estate until the other children get each $482.

"*Third*—I give and devise to my daughter Pet Dora Boatman the house and lot where I now reside, in Paris, Illinois, described as follows, to-wit: Lot No. 19 in Washington Alexander's addition to the city of Paris, county of Edgar, and State of Illinois. Also all of my house-

hold and kitchen furniture, and my driving horse, buggies and harness, that I may have at the time of my death, to be hers absolutely. She is to be charged in the division of my estate with the sum of fifteen hundred dollars ($1500) for the property. This is a low price for the property, but I wish to be liberal with her.

"*Fourth*—All the rest and residue of my property is to be disposed of as follows: John Boatman, Mark Boatman, Clarence E. Boatman, Charles Boatman, Clara B. Worsham, Pet Dora Boatman and Emory Boatman are each to have enough property or money, in value, to amount to each of them the sum of $4000, so as to make them equal with my son George Boatman, but Emory is to receive $382 less than the others, to make him equal, and the $1500 of property given heretofore in this will to my daughter Pet, is to form a part of her $4000, the object being to first make them all equal. The balance of my estate, if any, is to be divided equally among my eight children, share and share alike. The share of the real estate that my son Emory gets under this will is only a life estate. He is to have the use, rents and proceeds of said land, after paying taxes and necessary repairs, so long as he may live. At his death, if he leaves any child or children surviving him, then said land is to go to such child or children, but if he dies leaving no child or children surviving him, then said lands to go to his brothers and sisters. My children shall set off of my said lands to my said son Emory what would be his fair share of said lands, to be by him held during his natural life, as above provided, and if they and he cannot agree upon what is the right amount to be set off to him, then they, or either of them, may apply to the proper court to have the same set off to him as provided by law. My object is to give Emory the use of this land, that he may have the income during his life, and so that he cannot sell or mortgage the same, and so that it cannot be sold on execution or attachment against him. I desire that my

son Clarence E. Boatman shall have the right to have his share of my lands set off to him so as to include the dwelling house and improvements where I formerly lived, where Clarence now lives, provided he will pay to my executors hereinafter named the sum of $3000, the price at which I value said improvements, said sum of $3000 to be paid by said Clarence to my executors within eighteen months after my death.

"*Fifth*—I hereby appoint my sons John Boatman and Mark Boatman executors of this my last will and testament, and desire them to carry out the same.

"Witness my hand and seal this the 16th day of October, A. D. 1891.          REED M. BOATMAN.     [Seal.]

"Witness: WM. B. SHERIFF, JAMES A. EADS."

February 13, 1893, Clara B. Worsham by quit-claim deed conveyed to Mark Boatman, John Boatman, Clarence E. Boatman and Charles A. Boatman all her interest in the real estate her father owned at the time of his death.   June 2, 1893, John Boatman and wife, Mark Boatman and wife, George Boatman and wife, Clarence E. Boatman and wife, C. A. Boatman and wife and Pet Dora Boatman, as directed by the will, conveyed by quit-claim deed to Emory M. Boatman the lands in question herein, the deed reciting that the interest conveyed was but a life estate, as follows:   "The estate hereby conveyed is only a life estate, and is set off to said Emory Boatman by John Boatman and Mark Boatman, executors of Reed Boatman, deceased, and accepted by Emory Boatman in accordance with the terms and conditions of said will of Reed Boatman, deceased, and the title hereby conveyed is only such interest as is given by such will, and is subject to the conditions, terms and limitations thereof, and is to revert to his brothers and sisters should he die without leaving a child or children surviving him."

Clarence E. Boatman died February 14, 1899, leaving Ida M. Boatman, the complainant herein, his widow, and

leaving no child or children, or descendants of a child or children, him surviving. Emory M. Boatman died June 19, 1901, leaving no widow, or child or children, or descendants of a child or children.

Ida M. Boatman by her bill claimed that Clarence E. Boatman, her deceased husband, was seized of a vested interest in the land described as conveyed to Emory M. Boatman for life; that her said husband, Clarence E., left him surviving neither child, children or descendants thereof; that she, as his widow, became seized, under the statutes of descent, of an undivided one-half interest, in fee, of the real estate of which her said deceased husband died seized, and also of dower in such real estate, and that she was entitled to $\frac{30}{36}$ parts thereof. The decree granted relief to the appellee according to the prayer of her bill, and decreed that the quit-claim deed executed by Clara B. Worsham operated to vest in the grantees therein all interest of the grantor in the land involved which inured to her by virtue of the will of her father.

H. S. Tanner, for appellants.

F. P. Hardy, J. W. Shepherd, and F. C. VanSellar, for appellee.

Mr. Justice Boggs delivered the opinion of the court:

The contention of appellants is, that the remainder created by the will in the lands in which Emory Boatman was the life tenant was a contingent remainder, for the reason it could not be known until the death of Emory in whom the remainder would vest. This view is erroneous. The testator had six sons and two daughters, all living at the date of the will and at his death. The second clause of the will charged George Boatman, one of his sons, with advancements in the sum of $4000, and Emory, another son, with advancements in the sum of $482. The third clause devised to Pet Dora, one of his daughters, real estate and personal property which the testator

valued at $1500, and directs that she be charged with that amount in the division of his estate. The fourth clause disposes of the residue of his property. The provisions of this fourth clause are, that the residue of his property is devised and bequeathed to his sons and daughters, share and share alike, (the advancements to George and Emory and the devise and bequest to Pet Dora being deducted,) the share of Emory in the real estate to be an estate for life only, the remainder in fee to go to the child or children of Emory surviving him, if any, but if he should die leaving no child or children surviving, then to "his brothers and sisters." In the preceding portion of the same clause of the will the testator provided the residue of his estate remaining after all his sons and daughters had received an equal amount should be "divided equally among my eight children, share and share alike." The eight children of the testator were Emory and "his brothers and sisters." The persons intended by the testator to be designated as remaindermen by the term "his brothers and sisters," were those whom, together with Emory, the testator had immediately before described as "my [his] children." The same persons were in the succeeding sentence denominated by the testator as "my children," and were authorized to set off to Emory "what would be his fair share of said lands, to be by him held during his natural life," etc., or in case "they" (the brothers and sisters) and Emory could not agree as to the allotment, should apply "to the proper court" for an order making a fair and just allotment. At the time of the death of the testator Emory was living. The remainder-men *in esse* at that time were therefore those persons who at the death of the testator could answer the description of brother or sister to the life tenant.

The law favors the vesting of estates. Estates created by a testator will be regarded by the courts as vested estates, and not contingent, unless it is manifest that a contrary result was intended. (*Chapin* v. *Crow*,

147 Ill. 219.) Thus, we have held that a power given a life tenant to sell and convey the fee did not render the remainder contingent, but that it is a vested remainder, (*Kirkpatrick* v. *Kirkpatrick*, 197 Ill. 144,) and that though power is given to a trustee to pay or deliver over the estate to the life tenant, yet the remainder is vested, (*Harvard College* v. *Balch*, 171 Ill. 275,) and in case of a devise to one for life, with remainder over to his child or children, the remainder will vest in the children of the life tenant in being at the time of the death of the testator, but will open up to let in an after-born child, if any. *Schaefer* v. *Schaefer*, 141 Ill. 337.

A vested remainder has been defined as follows: "A vested remainder is an estate to take effect after another estate for years, life or in tail, which is so limited that if that particular estate were to expire or end in any way at the present time, some certain person who was *in esse* and answered the description of the remainder-man during the continuance of the particular estate would thereupon become entitled to the immediate possession, irrespective of the concurrence of any collateral contingency." (20 Am. & Eng. Ency. of Law,—1st ed.—838.) In 4 Kent's Commentaries (13th ed. bottom p. 228,) the author says: "A remainder limited upon an estate tail is held to be vested, though it must be uncertain whether it will ever take place." And in note *d* to the text it is said: "Thus, in case of a devise to A and the heirs of his body and in default thereof to B, or in the case of devise to B and after his death without male issue to C, and after his death without male issue to D, and if D die without male issue, none of these prior devisees being living, to E in fee, here the remainder, to B in the one case and to E in the other, is vested."

The brothers and sisters of Emory living at the time of the death of the testator were the only persons *in esse* who could answer the description of remainder-men. The mere fact that children might afterward be born to Em-

ory and might survive him would not render the interest of the brothers and sisters of Emory contingent. Each of said brothers and sisters, at the death of the testator, became seized of a vested remainder in the land in which Emory had a life estate. The remainder was liable to be divested by the birth of a child to Emory who should survive him, but it was not so divested. Clarence E. Boatman, husband of the appellee, was a brother of the said Emory, and at the time of the death of testator said Clarence E. became seized of a vested, undivided interest in fee in remainder in the lands in which said Emory had a life estate. The said Clarence died childless. Thereupon this undivided vested interest, under the statutes of descent, descended as follows: An undivided one-half interest to the appellee, the other undivided one-half interest to the brothers and sisters of said Clarence, subject to the dower interest of the appellee. The interests so descending by the statutes of descent, upon the death of Emory became vested interests in possession, in fee.

The appellant Clara B. Worsham, a sister of said Emory Boatman, prior to the death of said Emory executed a quit-claim deed to all her brothers except Emory, by which she conveyed and quit-claimed all of her interest, of every nature and kind, in the real estate of which her father died seized. The deed contained no words expressing an intention that it should extend to an after-acquired title. Mrs. Worsham therefore contends that upon the death of Emory she acquired an interest in the fee of the land which was not affected by the quit-claim deed which she had executed to her brothers. The chancellor correctly overruled her contention. At the time of the execution of the quit-claim deed she was seized of a vested remainder in fee in the lands of which Emory was the life tenant, and the quit-claim deed was effective to transfer such vested interest to the grantees thereof.

The decree is affirmed.          *Decree affirmed.*