Purl v. Purl.

---

No. 22,786.

KATE PURL, *Plaintiff*, v. THOMAS C. PURL et al., *Appellees*, and MAUD PURL BILLING, as an Individual and as Guardian, etc., *Appellants*.

SYLLABUS BY THE COURT.

FOREIGN WILL—*Life Estate—Contingent Remainder.* The will of a testator who resided in Illinois gave land in Kansas to his son, "to have during his life, and at his death it goes to his children, if he has any living; if not, it goes to his brothers and sisters or their heirs." *Held*, the remainder was contingent until death of the life tenant, whether the will be interpreted according to the law of Illinois or according to the law of Kansas.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed April 9, 1921. Affirmed.

*Eugene S. Quinton, J. G. Waters,* and *J. C. Waters,* all of Topeka, for the appellants.

*J. J. Schenck,* and *W. E. Atchison,* both of Topeka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The appeal was taken from a judgment of the district court based on an interpretation of a will, the decision being that a remainder to children of a life tenant, if he had any living, was contingent until death of the life tenant.

Thomas C. Purl made the will in the year 1880. The will begins as follows:

"Know all men by these presents, that I, Thomas C. Purl, of Carrolton, in the county of Greene and state of Illinois, being in good health and of sound mind, do make this, my last will and testament, that my land at my death shall be divided between my children as herein pre-scribed."

Several children were given land "to hold forever." One son was given nothing, because his share of the testator's land had been deeded to him. The first item of the will gave land to a daughter, Caroline Tunnel, "to hold during her life, and at her death it goes to Mary Alice Purl [a sister] and Oliver T. Purl [a brother], if one or both of them are living, and if not, it goes to her surviving brothers." The sixth item of the will reads as follows:

"Fillmore Purl is to have the northwest quarter of section thirty, also forty acres off the west end of the south half of section nineteen, town thirteen, south of range sixteen, east of the sixth principal meridian, containing 200 acres more or less, in Shawnee county, Kansas, to have during his life, and at his death it goes to his children, if he has any living; if not, it goes to his brothers and sisters or their heirs."

The testator died in 1891. When the will was made, Fillmore Purl had a wife, Kate Purl, and three children. Before death of the testator a fourth child was born. Fillmore, Kate, and their four children outlived the testator. One of the children, Francis, died intestate in 1907, leaving a widow, now Maud Purl Billing, and a son, Walter Francis Purl. Fillmore died on July 15, 1918.

The action was commenced by Kate Purl, on July 16, 1918, to quiet her title to the land described in the sixth item of the will. The defendants in the action were the surviving children of Fillmore and Kate, and the widow and son, heirs at law, of the deceased child, Francis. The claim of Kate Purl

was disposed of in the case of *Purl v. Purl*, 107 Kan. 314, 191 Pac. 297. The widow and child of Francis claimed that the remainder. created by the sixth item of the will vested, at death of the testator in 1891, in the four children of Fillmore, then living; that on the death of Francis, in 1907, his widow and child inherited his share of the land; and that on the death of the life tenant in 1918, they became entitled to possession.

When the will was executed and when the testator died, he resided in the state of Illinois. The land is in Kansas, and a preliminary question is raised with respect to what law governs interpretation of the will. The appellants insist that the law of Illinois is controlling. The supreme court of Illinois and this court are in substantial accord on the subject. Title to land must be derived according to the law of the place where the land is situated; but the law of the testator's domicile, with which he was probably familiar, may throw light on his intention. (*Peet v. Peet,* 229 Ill. 341; *Larned v. Larned,* 98 Kan. 328, 158 Pac. 3.) The supreme court of Illinois and this court likewise agree upon the following propositions. The intention of the testator is to be ascertained, and when ascertained it must be given effect, unless thwarted by some positive rule of law. That intention must be expressed in the will, and extrinsic facts may not be considered for the purpose of giving effect to some supposed intention not expressed in the will. A will speaks from the time of the testator's death. A remainder will be regarded as vested rather than contingent, unless such an interpretation would contravene the testator's expressed intention. A devise may vest, although time of enjoyment may be postponed. A testator may, however, within certain limitations, not now important, control disposition of his property by his will. He may make a particular devise speak as of a time subsequent to his death, and should he do so, his intention must prevail. The whole will should be considered, in the search for intention.

Assuming for the present that the testator undertook to express a devise of Kansas land according to Kansas law, this court would say the remainder was contingent until death of the life tenant. If the course of the testator's thought indicated by the simple words he used, be followed step by step, the will is free from ambiguity. The land is given to Fillmore for

his life; at his death it goes to others; it goes to his children, if he has any children living; if he has no children living, it goes to his brothers and sisters. The testator's mind was occupied with two things: who should enjoy the land at his death, and then who should enjoy the land at Fillmore's death. He was not concerned at all about such of Fillmore's children as were alive at the date of his own death. Fillmore's life estate commenced then, and the testator looked forward to what should became of the land at the death of Fillmore. If Fillmore, at his death, should leave living children, the land should then go to them; otherwise to his brothers and sisters. Whether the first class of remaindermen would be in existence at all, and if so who would compose it, could not be determined until Fillmore died.

The interpretation proposed by the appellants would make the will read in this way: Fillmore and his children are to have the land at my death, Fillmore to have it during his life, and at his death it goes to his children, if he has any living at my death; if he has no children living at my death, it goes, at his death, to his brothers and sisters or their heirs. A layman, with mind unconstrained by canons of interpretation, and unconfused by contradictory decisions arrived at by application of the same canon to the same words, would say the proposed interpretation is incorrect. The qualification, "if he has any living," is one of survivorship which renders uncertain the going of the land at Fillmore's death, and the remainder is one to children of a life tenant, if any survive him.

The ablest English and American text-writers agree that a remainder of the character just described is contingent (Leake on Property in Land, 2d ed., p. 235—to A, for life, remainder to his children living at his decease; Gray, The Rule Against Perpetuities, 3d ed., p. 86—to A for life, remainder to such of his children as survive him; 1 Tiffany, Real Property, 2d ed., pp. 489, 494—to A for life, remainder to his children living at his death); and the supreme court of Illinois is of the same opinion. In the case of *Blakeley v. Mansfield,* 274 Ill. 133, the testator made devises to his children for life, and "after their death to go and descend to their children if any survive them." (p. 134.) In the case of *Brown v. Kamerer,* 276 Ill. 69, the testator gave property to his son, Lewis A. Kamerer, for life, with remainder, at death of Lewis

A. Kamerer, to his children, if he should leave any children surviving him. The court was familiar with the method of interpretation which sometimes regards words such as "after their death" and "at the death of" as descriptive of termination of the life estate. The court was familiar with the test sometimes applied, that present capacity of a remainder to take effect if the possession were to become vacant, makes a vested and not a contingent remainder. The court had many times considered postponement of division for convenience of funds, or to permit enjoyment of a life estate. The court held the remainders were contingent, and not vested. In each case the contingency of survival entered into the description of the remaindermen.

The appellants cite the cases of *Carter v. Carter,* 234 Ill. 507, and *Thomas v. Thomas,* 247 Ill. 543, as identical with this one, and as controlling. In the Carter case, the testator's second wife, Mary Jane Carter, was given a life estate in land. Should she remarry, the rents were to go to the support of seven named children of the testator and the life tenant. The will then provided: "and at the death of the said Mary Jane Carter said lands to be equally divided, either in parcels or value, amongst the above-mentioned children." (p. 509.) The remainder was held to be vested. In the Thomas case, the will gave land to the testator's daughter for life, and then continued: "and at her decease the same shall be divided among her children in fee, share and share alike." (p. 544.) In the opinion the court said the case could not be distinguished in principle from that of *Carter v. Carter.* If the appellants were able to obliterate from the Purl will the phrase "if he has any living," the Carter and Thomas cases might be pertinent; and this distinction was expressly drawn in the opinion in the Thomas case:

"The rule contended for by appellants is applicable in cases where the postponement of the period of distribution is for reasons personal to the devisees, or in cases where the language clearly indicates an intention that the remainder is to vest only in such members of the class as survive the period of distribution. There is clearly no word of survivorship in the clause in question." (p. 545.)

The expression "period of distribution," properly applies to those cases only in which there has been a conservation of funds or property, or a keeping intact of the corpus of the

estate, or some similar arrangement, for some desired purpose. When the purpose has been accomplished the fund or property is divided among beneficiaries. Frequently the expression is used loosely. There is no period of distribution in the Purl will. There are distinct and successive takings of the same land, first by the life tenant for his life, and then by the remaindermen in fee. With the testator's mind dwelling, not on the time of his death, but on the time of Fillmore's death, and on where the land should go at Fillmore's death, the testator gave to children of Fillmore if, and only if, Fillmore was survived by children.

In the Carter case, it was said the only object in postponing division of the estate among named children who were all alive, was that the second wife might enjoy it during her lifetime or widowhood. An inclination to treat a life estate as a sort of curtain raiser, to be endured until the main performance—enjoyment of the remainder—commences, is not apparent in other decisions. In the case of *Brewick v. Anderson*, 267 Ill. 169, real and personal property were given to the testator's wife for life. The next clause of the will follows:

"At the death of my beloved wife, Johanna Johnson, it is my will and desire to then have all of my real estate that I die possessed of, *together* with all personal property then belonging to my said estate, after all just debts of my said wife have been paid, to be *divided equally* among my children, share and share alike, and in case of the death of any of my children before the distribution of my said estate, then in case they have left at said time of distribution any living issue, then said child or children to take the part of my deceased child or children." (p. 170.)

In the opinion the court said:

"Where there is a devise to a class, as to the children of the testator, and the gift is postponed, pending the termination of a particular estate which intervenes between the death of the testator and the period of distribution of the estate devised to the class, those members of the class, and those only, take who are in existence at the arrival of the time for distribution, as at the death of a life tenant, unless there is particular language in the will showing a different intention." (p. 171.)

The appellants say that in the Brewick case the life estate was given in one clause of the will (the first), while the remainder was given in another (the second). This observation is out of harmony with appellants' insistence that everything "within the four corners of the will" must be considered. The appellants say further that the life tenant's debts were to be

paid out of the estate before distribution. While such payment might affect quantity of estate, it did not affect membership of the class of remaindermen, and the decision was rested on the latter contingency.

Mr. Kales criticises the decision in the Brewick case, and submits that the principle of interpretation there stated is subject to gravest doubt. (Kales Estates, Future Interests, 2d ed., § 353.) This court is not now concerned with the merits of the decision, and Mr. Kales, who is qualified to speak, recognizes that the supreme court of Illinois is committed to the doctrine of the Brewick case. Conceding, however, that gift to a class, postponed pending termination of a life estate, is not *per se* sufficient to indicate that the remainder is contingent, the Brewick case was correctly decided on the facts, and there is no dispute in the authorities that when the condition of surviving a life tenant is attached, the remainder is contingent.

In Kales Estates, Future Interests, 2d ed., section 309, it is said:

"Perhaps the commonest example of a contingent remainder is where after a life estate an interest is limited to individuals, or to a class, provided they survive the life tenant."

A number of Illinois cases are cited in support of this text, among them being *Barr v. Gardner,* 259 Ill. 256. In that case a clause of the will gave to the testator's wife half of his property for her life. The next clause disposed of the remainder:

"At the death of my wife I give and bequeath the remainder of the aforesaid half of the estate to my lineal heirs should there be any living, if not, then to the heirs of my blood." (p. 258.)

The court held the remainder to be contingent, because it could not be known until the death of the wife whether there would be lineal heirs of the testator living at that time.

Commenting on the Barr case, the appellants say the life estate was given in a separate paragraph, which ended with a period, and the remainder consisted only of what was left of the estate—matters which were not of the slightest consequence in determining the question whether the words "should there be any living," paralleled in the Purl will by "if he has any living," made the remainder contingent. Commenting further, the appellants say the words of the quoted portion of the Barr will are not words of termination, but of a bequest at a fixed time, which is true. In the Purl will, the words "at

his death," stand for the first six words of the Barr will, "at the death of my wife"; and the two words "it goes," stand for the more elaborately expressed gift and description in the Barr will, "I give and bequeath the remainder of the aforesaid half of the estate." Continuing the comparison, "to his children" are the counterpart of "to my lineal heirs," and the two wills are identical in structure and legal effect.

The Barr case was approved and followed in the cases of *Collins v. Sanitary District,* 270 Ill. 108; *Brown v. Kamerer,* 276 Ill. 69; *Kamerer v. Kamerer,* 281 Ill. 587; and *Cole v. Cole,* 292 Ill. 154.

In the case of *Burlet v. Burlet,* 246 Ill. 563, the will read as follows:

"I give, devise and bequeath unto my beloved husband, Frank Burlet, any and all real estate, personal estate and mixed property, of whatsoever kind or character, for and during his natural life, and all that remains at his death I give, devise and bequeath unto my beloved children, share and share, or the survivor or survivors of them, and their heirs." (p. 564.)

The contention was that the remainder clause should be read as follows: "unto my beloved children, share and share, or the survivor or survivors of them *at my death,* and their heirs." The court said:

"The decisions in regard to determining when, in cases such as this, the survivorship is referred to the time of the death of the testator and when to the death of the person to whom has been given an intervening interest, are not in entire harmony. The rule now prevailing, and which we follow, is, that where a gift to survivors is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and those only, unless a special contrary intent is found in the will." (p. 566.)

The appellants make the following wholly irrelevant comment on this decision:

"It is perfectly plain that only such property as remained at the death of Frank Burlet, the husband, was given and devised to the children."

There are four mutually dependent constituents of the remainder clause of the Purl will, all of which are indispensable to expression of the testator's thought:

"at his death
it goes
to his children,
if he has any living."

In order to compel the fourth element to speak as of the date of the testator's death, it is necessary to change the uniform and consistent time sense of the clause, and to interpolate at the end of it the words "at my death." It is not possible to derive any such meaning from the words the testator used.

In the nearly three hundred volumes of the Illinois reports may be found conflicting decisions. Generally, the want of harmony has resulted, not from reading the will under consideration, but from running it through the mutilating gantlet of "rules for the interpretation of wills." Some observations on that subject may be found in the case of *Bryant v. Flanner*, 99 Kan. 472, 162 Pac. 280. One of those rules is that "a remainder must be construed to be vested if possible." While the mechanical method of interpreting wills prevailed, this rule was an obsession of some courts and text-writers who, therefore, gave it exaggerated importance. Some of the rules for the interpretation of wills and some of the terminology accompanying that subject are no more than inventions employed for the purpose of converting contingent into vested remainders. The correct doctrine is stated by the supreme court of Illinois in the recent case of *Smith v. Chester*, 272 Ill. 428:

"We are not unmindful of the rule that in cases of doubt or ambiguity in the language used in creating a remainder, a construction is favored that will make the remainder a vested one, but such rule must give way to the intention of the testatrix as expressed in the will." (p. 444.)

There is no other rule which either requires or permits the language of the Purl will to be distorted into expression of a remainder vested in the children of Fillmore living at the time of the testator's death.

The appellants say interpretation of the remainder clause of the sixth item of the will is controlled by the introductory clause, "that my land at my death shall be divided between my children, as herein prescribed." The effect of that clause was spent in the devises to children. It does not extend to the subject of remainders after devises to children. If it did so, it would exclude the remaindermen from taking at the testator's death.

The appellants demand to know why the testator should desire to prevent vesting of estate in his grandchildren at his

death. The court is not concerned with the testator's reasons for what he did. Its task is finished when it ascertains what he did. If obliged to indulge in speculation, the court would suggest as an answer, in order to exclude Kate Purl from all participation in the testator's estate, just as his daughter's children and other Tunnels were excluded by the life estate and contingent remainders given in the first item of the will.

The judgment of the district court is affirmed.