No. 24,989.

MRS. ADA KEMBLE, *Appellee,* v. O. O. BEARDSLEY (RALPH B. KEMBLE), *Appellant.*

#### SYLLABUS BY THE COURT.

WILL—*Interpretation of Will—Lands Left to Widow in Trust—Intention of Testator Determined.* A will of a testator who died December 16, 1916, left to the testator's widow outright all his property except two quarter sections of land. These were left to her in trust, the income to be divided between her, a daughter and a son, until Jonuary 1, 1925, when one quarter was to become the absolute property of the son and the other of the daughter. A clause was added that if the daughter died before that date "and prior to the death of her present husband" the quarter willed to her should be divided between her mother and brother. The daughter's husband died after the testator; she remarried and died intestate and .without issue April 12, .1920, survived by her husband. It is held that her share of the rents and profits of the land during the trust period passed to her second husband.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filéd February 9, 1924. Reversed.

*Charles C. Calkin,* of Kingman, for the appellant.
*John McKenna,* of Kingman, for the appellee.

The opinion of the court was delivered by

MASON, J.: Mrs. Ada Kemble, the widow of P. H. Kemble, who died December 16, 1916, sued O. O. Beardsley, the widower of her daughter Vera, upon a note. Liability upon the note was not denied, but Beardsley by way of cross demand set up a claim against the plaintiff for a part of the proceeds of a farm which she was handling as a trustee under her husband's will. The validity of his claim depends upon the construction of the will. Judgment was rendered against Beardsley, the court holding that his answer stated no cause of action, and he appeals.

The will gave to the testator's widow all his property excepting two adjoining quarter sections of land in Oklahoma. These were devised to the widow to be held by her in trust for purposes thus stated:

"That said Ada Kemble shall collect all the rents off of said land until January 1, 1925, and that the proceeds annually after the payment of taxes, insurance and the necessary repairs, shall be divided as follows, one-half to said Ada Kemble, one-fourth to my son Ralph B. Kemble, and one-fourth to

my daughter, Vera McQuitty. That said real estate shall not be disposed of, and upon arrival of said time, to-wit, January 1, 1925, the said [describing the north quarter] shall be and become the absolute property of Ralph B. Kemble to enjoy or dispose of as he may see fit; and upon the arrival of said time, to-wit, January 1, 1925, the [south quarter] shall be and become the absolute property of Vera McQuitty to enjoy or dispose of as she may see fit."

C. B. McQuitty, the husband of the plaintiff's daughter Vera, died after the testator—the exact date not being stated. Vera died intestate and without issue April 12, 1920, having in the meantime married Beardsley, who survived her. The decision necessarily indicated the holding of the trial court to be that after the death of Vera the share of the income of the Oklahoma land which would have gone to her if she had lived did not go to her surviving husband. The appellees—the testator's widow and son—claim that it went to them. It was stipulated in effect that no point should be made because of an administrator of Vera's estate not having been appointed, and that Beardsley should recover if her personal representatives or heirs were entitled to any part of the rents and profits of the Oklahoma land in the hands of the plaintiff as trustee.

The appellees urge that if these rents and profits be regarded as personal property the title upon the death of the testator vested in his widow by virtue of the clause in the will giving to her all his property except the two specified quarters of land. That position is untenable. The will is to be so construed as to carry out the purpose of the testator as gathered from the entire document. That he did not intend the rents and profits of the Oklahoma land to go to his wife alone is too plain for controversy, whether or not they are classified as personalty. The appellees cite in this connection a paragraph from *Grossenbacher v. Spring*, 108 Kan. 397, 402, 195 Pac. 884, but we regard it as inapplicable here because it had to do with a life annuity, which ceased with the death of the beneficiary. Although the trustee in the present case was directed to make an annual distribution of the profits of the land the payment was not an annuity in the ordinary sense, and certainly was not a life annuity.

The controversy chiefly turns upon the construction of a paragraph of the will which followed those already quoted, and read:

"I further direct that in case of the death of Vera McQuitty before said date, January 1, 1925, and prior to the death of her present husband, C. B. McQuitty, then said quarter of land, heretofore willed to her, shall be divided equally between my wife, Ada Kemble, and my son, Ralph B. Kemble, at the expiration of said term."

In support of their contention that because of the death of Vera the title to the land passed to her mother and brother, the appellees urge that the word "and" where it first occurs in the paragraph just quoted should be given the effect of "or." The words "and" and "or" are in some connections used interchangeably, and for cogent reasons one may sometimes be changed to the other by construction. (*Kennedy v. Haskell,* 67 Kan. 612, 73 Pac. 913; 2 C. J. 1338-43; note, Ann. Cas. 1913 A 1058.) In the case of a will this may be done only where necessary to carry out the clear intent of the testator. (2 C. J. 1340-41.) The paragraph referred to, if read as it is written, means that the widow and son were to take the land willed to Vera only in case she should die before January 1, 1925, and be survived by her first husband, McQuitty. If "or" were substituted for "and" it would then mean that this quarter section was to go to Vera's mother and brother in either of these two contingencies: (1) if Vera died before January 1, 1925; or (2) if her death, whether before or after that date, took place while McQuitty was still alive. We discover no grounds for saying with confidence that the will as written did not express the testator's meaning. True, a purpose to prevent McQuitty from acquiring the property by descent in any circumstances would be carried out by providing that if he survived his wife it should go elsewhere, irrespective of when her death took place. But we can judge of the testator's intention only by what he said, and there is no inherent improbability in the supposition that he was willing the land should go to Vera or her heirs without restriction if she lived until 1925, or if she died before that and McQuitty did not survive her, while preferring to bar McQuitty (as well as any children they might have) from any interest in it in case she died before that time, and he survived her. The fact that the will gave the land to the widow and son of the testator in case Vera died within the trust period "and prior to the death of her *present* husband, C. B. McQuitty" indicates that the purpose was not to prevent a surviving husband of Vera from acquiring title by descent, but was directed against the succession of the particular individual named—McQuitty. The effect of the paragraph with respect to Beardsley's claim to a share of the rents and profits is not merely negative. That the testator took pains to cut off the chance of McQuitty's acquiring title by descent in some circumstances suggests that he himself understood that this devolution would take place except for such provision.

The title to the land is not in issue here and the provisions regarding it are involved only so far as they bear upon the disposal of the income. The will appears to create an estate for years in the widow as trustee, she and the two chlidren being the beneficiaries, the fee vesting in them as remaindermen at the testator's death, their possession being of course postponed until the expiration of the trust period. However that may be, we hold that the gift to Vera of one-fourth of the rents and profits during the existence of the trust did not lapse with her death. They were not given to her on condition that she lived until the end of the period, but absolutely, and the title having vested in her lifetime passed to her surviving husband as her heir.

Cases cited by the appellees contain language having some apparent tendency against the view that Vera acquired a vested interest in the land or its income. We do not regard them as applicable here because of differences in the facts out of which they grew. In one the will specifically provided that if a child of the testator should die leaving a consort, such surviving consort should receive $500 and no other part of the estate. (*Brown v. Brown*, 101 Kan. 335, 166 Pac. 499.) In another a remainder was devised to the living children of the life tenant if he had any living, otherwise to his brother or sister or their heirs. (*Purl v. Purl*, 108 Kan. 673, 197 Pac. 195.) In another the trustee was required to pay the income of real estate to the son of the testator during his life. (*Johnson v. Coolbaugh*, 109 Kan. 597, 201 Pac. 59.)

The judgment is reversed and the cause remanded with directions to overrule the demurrer to the answer.