No. 30,103.

FERGUS McLEAN et al., *Appellees*, v. GERTRUDE STANLEY and A. C. MALLOY, *Appellants*.

(5 P. 2d 839.)

Opinion filed December 12, 1931.

A. C. Malloy, Roy C. Davis, Warren H. White and Frank S. Hodge, all of Hutchinson, for the appellants.

C. M. Williams, D. C. Martindell and W. D. P. Carey, all of Hutchinson, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action for the construction of a will. The question involved is, whether the will creates a vested remainder or a contingent remainder.

The remainder in question is to a granddaughter of the testator after two life estates, one to the wife of the testator and the second to his daughter Alvina. The remainder is to the children of Alvina in fee.

When the will was executed Alvina was married but had no children, but at the death of the testator, nine years later, Alvina had one child, a daughter, about six years old. Four years after the death of the testator Alvina died intestate, leaving a husband and this one child. Two years later the husband remarried. Four years after the death of Alvina this daughter and only child of hers died intestate, and three years later the father of this child died intestate. During all this time the wife of the testator, and grandmother of the child, was still living and continued to live four years longer, and died December 29, 1928.

If the will gave a vested remainder to the granddaughter, there is no question about the defendant, Gertrude Stanley, the second wife of Alvina's husband, succeeding through her husband to the full and complete estate of the child, and the other defendant's interest in an oil royalty depends wholly upon the title of Gertrude Stanley. The trial court construed the will to create only a contingent remainder in the granddaughter, contingent upon her surviving the wife of the testator, which she did not do. From this ruling the defendants appeal, contending that the granddaughter took a vested remainder upon the death of the testator, with the enjoyment postponed until the termination of the two preceding life estates.

The portions of the will calling for particular consideration are as follows:

"Second. I give and devise unto my beloved wife, Mary Jane McLean, all my real estate of which I may die seized, wherever situated, for the term of her natural life; . . .

"Third. It is my will that at the death of my said wife, should she survive me, my real estate shall pass to and become the property of the persons hereinafter mentioned, and in the manner and amount hereinafter provided, that is to say:

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(e) To my beloved daughter, Alvina Stanley, the following-described real estate for the term of her natural life, and at her death to her children in fee, to wit:

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Fourth. Should any of my said children die and leave no children, such death taking place before the death of my said wife, then at the death of my said wife, such child's share shall go to the brothers and sisters of such deceased child share and share alike.

"Fifth. Should any of my said children die before my said wife, then at the death of my wife, the property herein willed to go to such deceased child shall go to and become the absolute property in fee of the children of such deceased child . . ."

Appellees call attention to the fact that in each of the third, fourth and fifth sections of the will, quoted above, the testator uses the expression "at the death of my wife;" urging the conclusion that the testator had the intention and desire to postpone the vesting of any estate except the life estate in his wife until her death. The frequency of occurrence of this expression, it is contended, shows, as was said by the court in the case of *Bullock v. Wiltberger*, 92 Kan. 900, 142 Pac. 950, that the manifest intention of the testator was that his estate should be kept intact until the death of his wife and was then to be divided. The trial judge in a written opinion stated he was following the Bullock case, and compared the two cases in the use of the expression "at the death of my wife" and "after the death of my wife," concluding that both expressions showed an intention to delay any passing of title until after or at the death of the wife, thereby suspending the fee during the interval between the death of the testator and that of his wife, in this case a period of sixteen years, which should only be done when no other construction appears to be reasonably within the intention of the testator. (*Bunting v. Speek*, 41 Kan. 424, 451, 21 Pac. 288.) Appellees support the view of the trial court not only with the Bullock case, but a number of others, logically and forcibly applying the rules of construction therein prescribed to the language of the will in this case.

In the first place, the will in this case contains no such contingency as does that in the Bullock case about the property being "divided equally among my children then living"—that is, after the death of the wife. The corresponding provision in the will here under consideration provides in the fifth paragraph that if any of my children die before my wife then at her death the property shall go to the children of such deceased child—nothing amounting to the contingency expressed in the other will.

Another point of distinction between these wills is that in the will in the Bullock case there is an absence of any express words devising or bequeathing the estate to the children, as stated in the opinion in that case. It provides that "after the death of my wife it is my will that all my property shall be divided equally among my four children" (naming them). In the will in the case at bar we have in the third paragraph the statement that at the death of the wife his property "shall pass to and become the property of" certain persons, and as to Alvina it states, "To my beloved daughter, Alvina Stanley, the following-described real estate for the term of her natural life, and at her death to her children in fee." We think the distinction is so great that the rulings in the Bullock case are not strictly applicable to the provisions and language of this will, and there can be no question as to this language being sufficient to devise or bequeath the property.

A forcible distinction between the will in this case and that in the case of *Purl v. Purl*, 108 Kan. 673, 197 Pac. 185, is in the provision in the will in that case that at the death of the son, who takes a life estate, "it goes to his children if he has any living, if not it goes" to others, and the court, commenting on this language, said:

"The qualification, 'if he has any living,' is one of survivorship which renders uncertain the going of the land at Fillmore's death, and the remainder is one to children of a life tenant, if any survive him." (p. 676.)

The provisions in the thirty-year trust will in the case of *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 317, 211 Pac. 146, are so different from those in the will here under consideration that we cannot well apply the rules there enunciated. There it provided that "For a term of thirty (30) years after my death, at which time said property shall descend as hereinafter provided." It also refers to the surviving children at the termination of the trust, which made it necessarily a contingent remainder, as it was held.

The case of *Martin v. Lassen*, 122 Kan. 406, 251 Pac. 1083, cited

by appellees, was where the will was held to have created a contingent remainder because it provided for a trust estate, and after that time the property should be disbursed, one-half to the widow and the other half to the children, and if any child should die without leaving any children, then that share shall be divided between the surviving children.

Another case cited by the appellees is *Walker v. Row*, 132 Kan. 564, 296 Pac. 699, and it involved life estates in separate property to a daughter and a granddaughter, the remainder after the daughter's life estate to go to her living children, which made it a contingent remainder, and the decision as to the devise to the granddaughter turned upon the contention of whether or not it was a fee-tail estate, the remainder going to her children in equal shares, and she having conveyed it before being married or having any children.

While the fourth paragraph of the will in this case is not applicable to the existing facts in the case, it may properly be considered in order to learn the intention of the testator. Our attention is also directed for the same purpose to the distinctly different provision made by the testator as to other grandchildren, stating the names of some of them. This may in part be explained by the fact that when the will was written Alvina had no children, but her daughter was six years old before the death of the testator.

Also, the fifth paragraph of the will has no practical application to the facts in the case, as it only provides for the passing of the life estate given to Alvina. This by her death before the death of the wife of the testator was simply eliminated or merged.

Both parties refer to the case of *Bunting v. Speek,* supra, as the early decision on this subject which carefully discriminated between a vested and a contingent remainder, and by the frequent reference to it in later decisions those distinctions are shown to have been regularly approved and followed. Among the rules therein announced are the following:

"In a devise to. a wife for life, with remainder to the legal heirs of the testator, to create a contingent remainder the intent so to do must be expressed in words so plain that there is no room for construction.

"No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." (Syl. ¶¶ 1, 2.)

Very concise general definitions of these two estates are given in 21 C. J. as follows:

"A vested remainder is where a present interest passes to a certain and definite person but to be enjoyed *in futuro*." (p. 979.)

"A contingent remainder is where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event." (p. 981.)

Our legislature in 1915 defined vested remainders for the purpose of taxing legacies and successions as follows:

"Vested estates in remainder, as used herein, shall include all estates where the remainderman, being alive, would take at once if the life tenant were to die." (R. S. 79-1504.)

Applying these definitions to the language used in the will here under consideration as concerns the daughter Alvina and her daughter, this granddaughter living at the time of the death of the testator would take at once if the two life tenants were to die. A present interest passed in fee to a certain and definite person, the granddaughter of the testator, but to be enjoyed in the future after the death of the two life tenants. The postponement prescribed by the terms of the will had reference to the enjoyment rather than the vesting of the estate. This estate of the granddaughter is neither limited to a dubious or uncertain person nor upon the happening of a dubious and uncertain event. The plain and unambiguous language of the will gives the life estate to the wife and at her death the real estate shall pass to and become the property of persons hereinafter named, one of whom was his daughter Alvina, and to her for her natural life "and at her death to her children in fee." Paragraphs four and five do not appear to us to cast any doubt as to the evident intention of the testator to vest a present interest at his death in whoever might at that time be the children of Alvina; neither do we think the different provisions of the will as to some of the other children change this natural and reasonable intention on his part as to his devise to Alvina and her children.

"Where a life tenancy and remainders are carved out of an estate by will, and the remaindermen are *in esse*, definitely ascertained, and nothing but their death before the termination of the life tenancy can defeat their title, the remainders thus created and bestowed by the will are vested absolutely in the remaindermen." (*Stevenson v. Stevenson*, 102 Kan. 80, syl. ¶ 3, 169 Pac. 552. See, also, *McLaughlin v. Penney*, 65 Kan. 523, 70 Pac. 341; *Hammond v. Martin*, 100 Kan. 285, 164 Pac. 171; *Markham v. Waterman*, 105 Kan. 93, 181 Pac. 621; *Shehi v. Williamson*, 122 Kan. 118, 250 Pac. 1075; and *Caple v. Warburton*, 125 Kan. 290, 264 Pac 47.)

The possibility of Alvina having other children than this one does

not disturb nor prevent the vesting of a present interest in remainder in this granddaughter of the testator at his death, under the rule where a class, as children, is named in the will. (23 R. C. L. 533.)

We conclude that under the provisions of the will in this case a vested remainder was created in Alvina's daughter at the death of the testator and not a contingent remainder, and therefore her interest passed upon her death intestate to her father and upon his death intestate to his second wife, the defendant, Gertrude Stanley.

The judgment is reversed and the cause is remanded with directions to set aside the judgment in favor of the plaintiffs and render judgment in favor of defendants in accordance with the views herein expressed.