No. 33,544

A. E. BUXTON and PAUL L. NOBLE, Testamentary Trustees of the Last Will and Testament of Edward A. Noble, Deceased, and Trustees, etc., *Appellants*, v. PAUL L. NOBLE et al., *Appellees*.

(73 P. 2d 43)

Opinion filed November 6, 1937.

A. L. *Moffat*, of Kinsley, for the appellants.

*Harry G. Henderson*, of San Francisco, Cal., for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was brought by testamentary trustees under the last will and testament of Edward A. Noble, deceased. The action was commenced after the estate of Edward A. Noble had been administered, and in order to obtain a construction of his will. The trial court found the will created a vested, and not a contingent, remainder in four residuary legatees and devisees mentioned in paragraph nine of the will. From that ruling plaintiffs appeal.

They contend the will created a contingent remainder, and since only one of the remaindermen, Paul L. Noble, was living at the termination of the life estate, he was entitled to the entire remainder. On the other hand, the defendant, Marie A. Butterly, who received the interest of Harry N. Barker, one of the four remaindermen by virtue of the latter's will, claims the trial court correctly construed the will of Edward A. Noble, and therefore she is entitled to an equal, undivided one-fourth interest in the remainder. Agnes Noble is not a party to this appeal. She was served with personal summons in the action, but made no appearance. The trial court, however, decreed her interest.

The proper construction of paragraph nine is the sole question presented in this appeal. It reads:

"Ninth. All the rest, residue and remainder of my estate whatsoever kind or nature and wherever situate, I give, devise and bequeath to my executors, hereinafter named and their successors in trust however for the use, benefit and enjoyment of my sister, Cora Helen Noble, of Kinsley, Kansas, so long as she lives. And it is my will that my said executors pay to her from time to time as she may call for it, all the income from my estate and when they may deem it necessary for her support, comfort and enjoyment, such part of the principal as they may deem proper. And on the death of my sister the said Cora Helen Noble, I give, devise and bequeath the residue thereof then remaining and the accretions thereto, if any, to my brother Lester B. Noble, my nephew Paul L. Noble, my nephew Edward T. Noble, and my nephew Harry N. Barker, share and share alike, per capita and not per stirpes."

The action was tried upon the issues joined by the pleadings. The trial court made special findings, which read:

"1. That Edward A. Noble died on the 26th day of September, 1923, leaving as his sole residuary devisees and legatees under the terms of said last will

and testament, the persons named in paragraph No. 9 thereof, to wit: Cora Helen Noble, beneficiary of, the trust provided for in said last will and testament; Lester B. Noble, his brother, and three nephews, Paul L. Noble, Edward T. Noble, and Harry N. Barker, residuary devisees and legatees.

"2. That Lester B. Noble, Paul L. Noble, Edward T. Noble and Harry Barker were all living at the time of the death of the testator, Edward A. Noble, namely September 26, 1923.

"3. That Cora Helen Noble died October 14, 1936. That all of the residuary legatees and devisees except Paul L. Noble died prior to the date of death of Cora Helen Noble. That Paul L. Noble is the sole surviving devisee and legatee.

"4. That Lester B. Noble, Edward T. Noble and Harry N. Barker all died testate and that each of them made testamentary disposition of their respective remainder interest in the estate of Edward A. Noble, deceased, and that the will of each testator had been duly admitted to probate.

"5. That under the terms of the will of Harry N. Barker, deceased, Marie S. Butterly is the sole residuary devisee of the estate of Harry N. Barker, and the owner of an undivided one-fourth interest in and to said estate of Edward A. Noble, deceased.

"6. That under the terms of the will of Edward A. Noble and Lester B. Noble, deceased, Paul L. Noble was and is the owner of an undivided five-eighths interest in and to said estate, and that under the last will and testament of Lester B. Noble, and Edward T. Noble, Agnes Noble is the owner of an undivided one-eighth interest in and to said estate.

"7. The court construes the last will and testament of Edward A. Noble, deceased, to create a vested remainder in Lester B. Noble, Paul L. Noble, Edward T. Noble and Harry N. Barker."

It will be observed the first four paragraphs constitute purely findings of fact. No objection is made thereto. Plaintiffs object to paragraphs five and six, which determine the interests of the parties, and that objection is based solely upon the contention the court erred in its conclusion of law contained in paragraph seven. In other words, if the court was correct in its construction of the will then the interests as set out in paragraphs five and six are conceded to be correct. If that construction was unsound then findings five and six must be set aside.

In support of the position the will created a contingent remainder appellants urge a number of theories. One theory is that the extent of the interest of the remaindermen could not be ascertained until the termination of the life estate. It is urged that under the provisions of paragraph nine, the trustees were permitted to dispose of the entire estate if they deemed it necessary for the support, comfort and enjoyment of the life tenant, testator's sister. The trouble

with that theory is that the right of a life tenant to exhaust the estate is not a test of a vested remainder. The right to exhaust an estate does not destroy the power to create an interest in the residue, if any such there be. In *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, it was said:

"Where the interest is vested, where its status is fixed, it is immaterial that the right or interest may be of indefinite value, or that when the efflux of time brings the remainderman into possession it may have no material value. [And citations.]" (p. 97.)

If the remainder actually vested, then the owners thereof had an interest therein, irrespective of its dignity or value which they could transfer by sale or devise subject, of course, to the life estate (*Stevenson v. Stevenson,* 102 Kan. 80, 169 Pac. 552, and *Markham v. Waterman,* supra). We are thus forced to return to the point of beginning and inquire whether this will created a vested remainder. Appellants again contend it did not. The basis of their second contention is that the question of which of the four named remaindermen would take under the will could not be determined until the expiration of the life estate. In this view appellants are in error. The remaindermen were definitely named. There was no uncertainty concerning their identity. They were living at the death of the testator and took immediately upon the death of the life tenant. These facts satisfy every element of a vested remainder in this state. Our lawmakers have seen fit to expressly define a vested remainder. The pertinent portion of G. S. 1935, 79-1504, provides:

"Vested estates in remainder, as used herein, shall include all estates where the remainderman, being alive, would take at once if the life tenant were to die."

This definition is a part of the act on taxation. We need not now determine whether this statutory definition would be applicable to every contingency. It is sufficient to say that definition would not compel a conclusion a contingent remainder was created in the instant case. The will made the remaindermen definitely ascertainable. That a vested remainder was thus created cannot be doubted.

In the case of *McLean v. Stanley,* 134 Kan. 234, 5 P. 2d 839, this court said:

"Very concise general definitions of these two estates are given in 21 C. J. as follows: 'A vested remainder is where a present interest passes to a certain and definite person but to be enjoyed *in futuro.*' (p. 979.)

" 'A contingent remainder is where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event.' (p. 981.)" (pp. 238, 239.)

This distinction between vested and contingent remainders has been clearly emphasized in *McLaughlin v. Penney,* 65 Kan. 523, 70 Pac. 341; *Hammond v. Martin,* 100 Kan. 285, 164 Pac. 171; *Stevenson v. Stevenson,* supra; *Markham v. Waterman,* supra; *Shehi v. Williamson,* 122 Kan. 118, 250 Pac. 1075; *Caple v. Warburton,* 125 Kan. 290, 264 Pac. 47; *McLean v. Stanley,* supra; *Anderson v. Wise,* 144 Kan. 612, 62 P. 2d 825. These citations are not intended as an exhaustive list of cases on the subject, but merely as indicative of what has been said on numerous occasions.

We may approach the problem from another angle. The ascertainment of the remaindermen was not postponed until the termination of the life estate, for the reason the will clearly constituted a present grant. The portion of the will, "I give, devise and bequeath the residue thereof then remaining and the accretions thereto, if any, to," etc., constitutes words of present devise and bequest. They do not postpone the vesting. The words "And on the death of my sister, the said Cora Helen Noble," relate only to the time of actual enjoyment. Only the time of enjoyment is postponed thereby. This clearly has been the interpretation placed upon wills in which very similar language was employed (see syllabus 1 in *McLean v. Stanley,* supra, for terms of the will). In that case it was held:

"Where by the provisions of a will an interest passes in fee to a certain and definite person in being or the only one of a prescribed class, as children of a certain person, the taking of the estate at the death of a life tenant generally and naturally has reference to a postponement of the enjoyment rather than a postponement of the vesting of the estate." (Syl. ¶ 2.)

In the instant case, can it be said the intention to create a contingent remainder was so clearly expressed as to leave no room for construction? In the early case of *Bunting v. Speek,* 41 Kan. 424, 121 Pac. 288, it was held:

"No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." (Syl. ¶ 2.)

That portion of the principle announced in the Bunting case has been adhered to consistently in subsequent decisions. It is in keeping with the generally recognized doctrine. In the recent Anderson case, *supra,* decided December, 1936, this court quoted, with approval, the following:

"It is said in 69 C. J. 597: 'In accordance with the rules heretofore stated, a clearly manifested intention as to the time of vesting will prevail over the rules of construction in favor of vesting, but the law favors the early vesting

of testamentary gifts. If a contrary intention does not clearly appear an interest will always be construed as vested rather than contingent, and to vest at the earliest possible time consistent with the testator's intention, so that if a contrary intention is not manifest the interest will usually be regarded as vesting immediately upon the testator's death.'" (p. 617.)

In support of the contention a contingent remainder was created we are referred to cases from foreign jurisdictions and especially to our own decisions in *Purl v. Purl,* 108 Kan. 673, 197 Pac. 185; *Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146; *Martin v. Lassen,* 122 Kan. 406, 251 Pac. 1083. The test of a vested remainder is so well settled in this state that it will be unnecessary to discuss decisions from other jurisdictions. The cited Kansas cases and many others are clearly analyzed in the McLean and Anderson cases, *supra,* and such analysis need not be repeated here.

Appellants contend the gift to the remaindermen was somewhat in the nature of a gift to a class, and as such carried with it elements of survivorship. We do not so read the will. If the testator had intended to make a gift to the four named persons, in the event they were then living, otherwise to the survivors of them, share and share alike, it would have been easy to so provide. He did not do so, and we are not at liberty to read into the will an intention neither expressed nor fairly implied.

Appellants further earnestly urge that in order to construe the will as creating a vested remainder, it is necessary to excise the words "per capita and not per stirpes." We do not think so. While their use was unnecessary to create a vested remainder whereby the remaindermen took "share and share alike," their use in no wise affected the result. "Per capita" means by the head, as individuals, while "per stirpes" means by representation. Now he expressly said he did not want them to take by representation but "share and share alike, per capita." They were all living and definitely ascertainable when he died and the remainder vested in them immediately. In 48 C. J. 808, "per stirpes" is defined as follows:

"By or according to stock or root; by right of representation; a term of the civil law, extensively used in the modern English and American law, to denote that mode of the distribution and descent of intestates' estates, where the parties entitled to take the shares which their stocks (such as a father), if living, would have taken."

In the work of Thompson on Real Property, 1929 Supp., Title by Descent, § 2339, it is said:

"The doctrine of representation is generally considered as applying only

when the claimants are related to the intestate in unequal degrees. That is to say when the claimants are equally related to an intestate they take directly and per capita. When the claimants of intestate property are related to the deceased in unequal degrees they take by representation and per stirpes." (See illustrations in notes.)

The remaindermen in the instant case were not equally related to the testator. One was a brother and three were nephews. Two of the nephews were sons of the brother remainderman. The other nephew was a son of testator's deceased sister. Under the law of descent and distribution the remaindermen would not all inherit equally from him. It was his desire they should take directly from him and equally. It is clear the words "share and share alike" were entirely sufficient to effectuate his purpose. In order to make doubly sure his intention was clear he emphasized that intention by adding the words "per capita, *and not* per stirpes."

We have excised nothing, but have interpreted the will by considering all of its provisions in order to effectuate the intent of the testator. This complies with every rule of construction. (*Regnier v. Regnier*, 122 Kan. 59, 251 Pac. 392; *Hoover v. Roberts*, 144 Kan. 58, 58 P. 2d 83, *Sipes v. Pessemier*, 144 Kan. 300, 58 P. 2d 1085.) The interpretation of the words "per capita and not per stirpes" is in complete harmony with the construction of the will as creating a vested remainder.

The judgment is affirmed.

ALLEN, J. (concurring specially): I agree that the limitation in the will created a vested remainder.

I do not think the statutory definition in the taxation statute quoted in the majority opinion is in harmony with the former decisions of this state, nor do I think it conforms to the present established doctrine of this state. The definition in that statute does not conform to the common-law theory of a vested remainder, and there is no evidence, except the occasional unfortunate quotation of this statute, and dicta in *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, which indicates that the common-law rule has been abandoned.

In New York the legislature at an early date undertook to define and classify future interests in land and to abolish the distinctions between remainders and executory limitations. The New York statute declared:

"A future estate is either vested or contingent. It is vested when there is a person in being who would have an immediate right to the possession of the

property on the determination of all the intermediate or precedent estates. . . ." (Cahill's Con. Laws of N. Y., ch. 51, § 40.)

While the wording of the Kansas statute is different from the New York statute, the substance is the same. Both statutes declare that if the remainderman is "alive" or "in being" and would take at once upon the ceasing of the supporting estate, then the remainder is vested.

That these definitions of a vested remainder are contrary to the common law will clearly appear from several illustrations. For instance, take a devise to A for life, remainder to his heirs. In jurisdictions where Shelley's case has been abolished as to such limitations, the usual interpretation is that it gives a life estate to A with a contingent remainder to his heirs. (*McCartney v. Robbins*, 114 Kan. 141, 217 Pac. 311.)

However, under the New York statute the same limitation was held to create a vested remainder. In the important case of *Moore v. Littel*, 41 N. Y. 66, familiar to all property lawyers, there was a conveyance to A for life and after his death to his heirs. A had twelve children. The question hinged on whether the children took vested or contingent remainders. The court followed the mandate of the statute—the children were in being, and would have an immediate right to the possession upon the ceasing of the precedent estate—and therefore held they took vested remainders.

But the common law says a living person can have no heirs. An heir takes by descent and not by purchase. Hence, unless the context changes the primary meaning of the word, the court will adhere to the primary meaning. Until death of the life tenant identity of heirs cannot be determined. This court so held in *McCartney v. Robbins*, supra. But the Kansas taxation statute would change this, and any children of A in existence would take vested remainders. Thus the adoption of the statute, as a general canon of construction, would overrule *McCartney v. Robbins*.

Again, let the limitation be to A for life, remainder to his surviving children. Here the gift in remainder is to a class. The common law says that only those of the class who should be alive when A dies are entitled to take at all, and as the members of that class who will survive the life tenant cannot be ascertained until the death of such tenant, it is uncertain until that event happens that any one of the class will fill the description. In other words, the death of the life tenant is a condition precedent to the ascertainment and identification of the remaindermen who are to take.

But the statute quoted above declares that all members of the class who are in existence during the life of the life tenant take vested remainders, even though the deed or will creating the estates nominates those only of the class who survive the life estate.

In *Purl v. Purl*, 108 Kan. 673, 197 Pac. 185, the devise was to A for life, remainder to his children, if he has any living. There were four children. Testator had specified certain members of the class to take—those living at death of the life tenant. This court held the remainder was contingent. But our statute G. S. 1935, 79-1504, declares that these children being alive and ready to take at once have vested remainders.

Under the common-law rule as to vested remainders, the remaindermen must be ascertained and identified. Under a gift in remainder to "surviving children" this rule is not satisfied. But a limitation so framed would comply with the statute.

It is clear, therefore, that G. S. 1935, 79-1504, if followed, would cause a departure from the doctrine as laid down in *Purl v. Purl*, supra.

Take a third illustration. Suppose a devise of land to A and B for life, remainder to the survivor in fee. Here the common law says the remainder is contingent, for until one die it is uncertain which will be the survivor. But since A and B are alive and are ready to take, the statute would give them vested remainders.

In *Boatman v. Boatman*, 198 Ill. 414, 65 N. E. 81, the testator, after a life estate, created alternative contingent remainders. The court following the rule announced in *Moore v. Littel*, supra, held the remainders were vested. In *Golladay v. Knock*, 235 Ill. 412, 85 N. E. 649, 126 Am. St. Rep. 224, the Boatman case was expressly overruled and the Illinois court returned to the common-law rule.

The dicta in *Bunting v. Speek*, supra, approving the New York statutory rule is not the law of this state. The opinion of the learned commissioner did not meet the approval of two members of the court. It has been criticized by subsequent cases, and has been discredited by the decisions in *McCartney v. Robbins*, supra; *Purl v. Purl*, supra, and other cases. The question is an old one and it seems strange that it should again be brought forward to perplex lawyers who must draft deeds and wills and pass on titles. For full discussion of the question, see 1 Simes, Law of Future Interests, ch. 5; note to *Robinson v. Guenther*, 241 Ill. 511, 89 N. E. 689, 25 L. R. A., n. s., 887; *Smaw v. Young*, 109 Ala. 528, 20 So. 370; *Fulton v. Fulton*, 179 Ia. 948, 162 N. W. 253, L. R. A. 1918E 1080, 1083.