PENALOSA STATE BANK, *Appellee*, v. JAMES F. MURRAY *et al.*, *Appellants*.

No. 17,516.

#### SYLLABUS BY THE COURT.

WILLS—*Devisee's Interest—Subject to Judgment Lien.* Where a will contains a provision purporting to devise real estate to several persons, followed by a direction that it be sold by the executor and that the proceeds be divided equally among them, the right with respect to such property acquired by one of them is subject to the lien of a judgment existing against him at the time of the testator's death.

Appeal from Reno district court. Opinion filed March 9, 1912. Reversed.

*W. G. Fairchild*, for the appellants; *H. S. Lewis*, of counsel.

*F. F. Prigg*, and *C. M. Williams*, for the appellee.

The opinion of the court was delivered by

MASON, J.: Samuel Sallee died January 20, 1909, owning the tract of land hereafter referred to. He left a will, all the material part of which, aside from the appointment of executors, was comprised in these two paragraphs:

"I devise bequeath and give to my beloved children, Adresta Blanchet, Ellen Moore, Mary Devoe, Delilah Hafstrom, Emma Murrah and John J. Sallee all of my Homestead located on the S. W. ¼ Sec. 28 Town 26 Range 9 west Reno Co Kans. To be disposed of by appraisement or Sale and all moneys Received from Such disposition to be divided equaly among the aboved Persons or their legal heirs.

"All the Rest and Residue of my Estate Real & Personal & mixed of which I shall die seized & possessed or to which I shall be entitled at my decease I give devise & bequeath to be equaly divided among my above named children or their legal heirs."

Prior to the death of the testator, James F. Murray obtained a judgment against Emma Murray, under her present name of Emma Corley, which is still in force. In June, 1909, Mrs. Corley transferred to the Penalosa State Bank all her rights of every character acquired under the will. In August, 1909, Murray caused an execution to be issued upon his judgment, under which he sought to sell the interest of Mrs. Corley in the land described, claiming that at the death of her father she had become the owner of an undivided one-sixth thereof, and that the lien of his judgment at once attached thereto. The bank procured an injunction enjoining the sale upon the ground that under the will Mrs. Corley acquired no title to the real estate, but merely a right to a share of the proceeds of its sale, which was to be made by the executors. Murray appeals.

Ordinarily where land is directed by a will to be sold, the proceeds to be divided among several persons, it is regarded as converted into personalty at the instant of death, upon the principle that equity regards that which ought to be done as already accomplished, and the beneficiaries are conceived as taking personal property instead of real estate. In that situation the doctrine has often been held to prevent the land being taken in execution upon a judgment against one of the legatees (9 Cyc. 851, 852), although that application of the rule is refused in Indiana (*Comer v. Light*, [Ind. 1911] 93 N. E. 660, 94 N. E. 325). A distinction is sometimes made where the sale is directed to be postponed until the happening of some event, as until the death of the holder of a life interest. The cases bearing especially on that feature of the matter, collected in a note in 20 L. R. A., n. s., 65, 69, illustrate the conflict of opinion upon other phases as well. A distinction has been made between a devise to an executor, with directions to sell and divide the proceeds, and the conferring on him of a mere naked power of sale, with

directions to execute it in that manner. (See *Williams v. Lobban,* 206 Mo. 399, 104 S. W. 58, and cases there cited.) It is not necessary to attempt to reconcile or to choose between the various views that have received judicial support. The theory of equitable conversion is a fiction invented to promote justice by carrying out the purpose of the testator, and it should be applied with that purpose in view. We think that here, upon a consideration of the entire instrument, it is evident that the testator intended that upon his death his children should become owners of the land devised, that they did so, and that the judgment lien attached to the interest of Mrs. Corley.

This case differs from any of those in which the provision of a will directing the sale of real estate has been held to effect an equitable conversion, in this: here the testator expressly devised the land to the persons who are to receive the proceeds. While he may be regarded as having given a power of sale to his executors, with directions to exercise it, he gave them nothing more. He not only omitted explicitly to vest the title in them—he explicitly vested it in his son and daughters. His purpose in this regard was not expressed casually or incidentally, but in such a way as to characterize it as the matter holding the first place in his thoughts. The only question is how far his language in this regard is to be regarded as modified by what followed. The inquiry is, Just what did he mean by the addition: "To be disposed of by appraisement or Sale and all moneys Received from Such disposition to be divided equaly among the aboved Persons or their legal heirs"? The use of the word "or" suggests that by "appraisement" he may have meant a partition by agreement, the respective shares to be made equal by appraisement. Assuming, however, that "or" should be read "and," the intention being that the sale should be made by the executors, the result is much the same. Even on the theory of an equitable

Bank v. Murray.

conversion, the persons among whom the proceeds were to be divided, being the same persons who were entitled to the property if it were regarded as real estate, had a right by unanimous agreement to accept it in kind, and thus avoid a sale. (9 Cyc. 855.) They could therefore by united action have divided the land, or sold it themselves and divided the money. The sole restraint placed upon them by the will—the only restriction that left their relation to the land short of a full ownership, was this: no one or more of them—fewer than all—could maintain an action for partition, and by that means compel either a division in kind or a judicial sale. Unless the parties in interest should agree otherwise, a sale would have to be made by the executors. On account of this limitation their control of the land fell by so much short of complete and absolute dominion. This was not enough to prevent their being properly regarded as the owners of the land. Holding under a will which in so many words devised it to them, their enjoyment of the devise being burdened by only so slight a condition, they could not fairly be said to have no title or interest in it.

The statute makes a judgment a lien upon the "real estate" of the debtor (Civ. Code, § 416), and that phrase includes "lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal" (Gen. Stat. 1909, § 9037, subdiv. 8). We think the equitable if not the legal title to the land was in the testator's children, that the judgment was a lien upon Mrs. Corley's interest, and that by a sale thereunder her rights and obligations would be transferred to a purchaser.

The judgment is reversed and the cause remanded with directions to deny the injunction against the sheriff's sale.