No. 30,283.

KARL M. SCHNEIDER, *Appellant*, v. PETER A. SCHNEIDER and ANNA M. STALLBAUMER, as Executors, etc., et al., *Appellees.*

(12 P. 2d 834.)

Opinion filed July 9, 1932.

*C. Oakley McIntosh* and *C. J. Evans,* both of Topeka, for the appellant.

R. M. Emery, Jr., of Seneca, Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes and Margaret McGurnaghan, all of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an order, first, of the probate court, and on appeal, of the district court, approving the final account of executors. From the record before us, including the findings made by the trial court, the facts may be stated briefly as follows: Mathias Schneider, a resident of Nemaha county and the father of the appellant here, died May 30, 1922. He left personal property of the value of $7,000, a farm of 320 acres, and a residence property in Seneca. At the time of his death he was a widower, his wife's death having preceded his. He left five living children and nine grandchildren who were the children of his deceased daughter, Jennie Kolzer. He left a will providing that his executors should take possession of all the property of which he died possessed and directing that his executors should proceed to sell and dispose of all his property, both real and personal, as soon as in their judgment the interest of the estate would permit, giving to them full power and authority to sell and convey the property, at either public or private sale, and on such terms and conditions as to them seemed best. The will contained provisions for dividing household effects without regard to value, for taking certain advancements into consideration, and for a monument and the care of the cemetery—none of which are important here. He gave to the children of his deceased daughter, Jennie Kolzer, the sum of $10,000 in money, to be equally divided among them. The will then provided that the balance of the proceeds of the estate should be divided equally among his five living children and a sixth interest to the children of his daughter Jennie, and if any of his other children be deceased at the time of distribution, then his or her share should go to the children of such deceased, and if no children, then to their legal heirs. A son, Peter A., and a daughter, Anna M., were appointed as executor and executrix.

Soon after the death of Mathias Schneider and the will was admitted to probate the executors sold the residence in Seneca and with the proceeds thereof, and of the personal property, paid all debts and costs of administration and paid the $10,000 to the children of Jennie Kolzer. Thereafter they sold 160 acres of the farm

and distributed the proceeds as provided by the will. This left 160 acres of the farm unsold.

In August, 1926, one of the sons, Karl M. Schneider, the appellant here, and his wife, executed to a bank at Seneca their note for $8,600, renewing an indebtedness then due the bank, and to secure the same gave to the bank a mortgage on an undivided one-sixth interest in the 160 acres last above mentioned and another 120 acres owned by them. The debt secured by this mortgage became due and was unpaid, and in October, 1928, the bank brought an action on the note and to foreclose the mortgage. In that action Karl M. Schneider and his wife filed an answer admitting the execution of the note and mortgage, and alleged, among other things, "that defendant Karl M. Schneider is the owner of the fee-simple title in and to the real estate described," and asked the court to provide in its decree that the real estate should be sold in separate tracts, "and that defendant Karl M. Schneider should be adjudged and decreed the right to redeem the whole or either separate tract thereof within eighteen months from the date of the sale thereof, as provided by law." In December, 1928, in that action the bank recovered a judgment against Karl M. Schneider and wife for $6,034.30, being the balance due on the $8,600 note, and that the same was a first lien upon the undivided one-sixth interest of Karl M. Schneider in the 160 acres of land above mentioned (also to be a lien on the 120 acres). The court adjudged the equity of redemption, as provided by law, to be in Karl M. Schneider and wife and fixed the period of redemption at eighteen months. In due time the property was sold under this judgment. The one-sixth interest of Karl M. Schneider in the 160 acres in question was bid in by the bank for $3,000. The sale was confirmed by the court, and after the payment of costs and taxes a credit of $2,790.48 was made on the judgment in favor of the bank, and a certificate of purchase for the undivided one-sixth interest of Karl M. Schneider in the 160 acres in question was executed to the bank. Karl M. Schneider never redeemed from that sale. He did pay the balance of the judgment rendered against him in that action, and in doing so knowingly took credit on such judgment for the proceeds of the sale previously mentioned.

In March, 1930, the executors under the will of Mathias Schneider sold the 160 acres in controversy. It is agreed in this proceeding

that the share of the net proceeds of this sale which Karl M. Schneider would have been entitled to under the will, had he not mortgaged his interest in the land and the mortgage been foreclosed, would have been $2,827.26. To satisfy the purchaser, and under the advice of counsel, the executors paid this sum to the bank and took an assignment of the certificate of purchase which it held. In making their final accounting to the probate court they asked credit for this payment, reporting the facts. Karl M. Schneider objected to that disposition of the money and demanded of the executors the payment to him of the sum of the $2,827.26 above mentioned. As previously stated, both the probate court and the district court, on appeal, denied his claim and approved the final settlement.

In this court appellant relies upon the doctrine of equitable conversion. He points out that while the testator by his will did not, in specific terms, vest title in his executors, he did give them possession of his real property and specifically authorized and directed them to sell it and to distribute the proceeds. From this it is argued that by the terms of the will the real property of which the testator died seized was converted into personalty for distribution.

The theory of equitable conversion is a fiction invented by courts of equity to promote justice in carrying out the purposes of the testator, and it should be applied with that purpose in view. (*Bank v. Murray,* 86 Kan. 766, 768, 121 Pac. 1117.) Equitable conversion has been defined to be that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendable as such. It is an application of the axiom that equity regards that as done which ought to be done. (*Haward et al. v. Peavey,* 128 Ill. 430, 21 N. E. 503.) In *Yerkes v. Yerkes,* 200 Pa. St. 419, 50 Atl. 186, it was said:

"The doctrine of equitable conversion is based on the rule that what is to be, or ought to be done shall be treated as if done already. It is a fiction therefore invented to sustain and carry out the intention of the testator or settlor, never to defeat it. Its application requires constant watchfulness to guard against the tendency to become a formal rule *de jure,* without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion, the property remains all the time in fact realty or personalty as it was, but for the purpose of the will, so far as it may be necessary and only so far, it is treated in contemplation of law as if it had been converted." (Syl. ¶ 1.)

We find it unnecessary to go into an exhaustive study of the doctrine of equitable conversion, or to examine critically the cases in which the courts have applied or have failed to apply it. Those interested will find the subject treated in 13 C. J. 852 *et seq.* and 6 R. C. L. 1065 *et seq.* Many of the cases are collected under the title "Equitable Conversion" in Words and Phrases, first, second and third series. Some of our own cases dealing with the question are: *Weir v. Bagby,* 72 Kan. 67, 82 Pac. 585; *Bank v. Murray,* supra; *Ward v. Benner,* 89 Kan. 369, 131 Pac. 609; *Smith v. Hensen,* 89 Kan. 792, 132 Pac. 997; *Bank v. Haid,* 97 Kan. 297, 155 Pac. 57; *Hart-Parr Co. v. Chambers,* 116 Kan. 136, 225 Pac. 1076; *Jones v. McMillan,* 124 Kan. 599, 261 Pac. 596.

The gist of the doctrine, so far as necessary here to be considered, is as above stated. As pointed out in the Yerkes case, it is not a rule of right, hence it is not one which can be invoked under all circumstances. It is designed to promote equity, hence it should not be used as a basis to accomplish inequitable results. For the purposes of this case it may be conceded that the will in question forms a basis where, under some circumstances, the doctrine might have been properly applied, but the facts of this case do not present such a situation. It is clear from the will in question that the testator desired certain things to be done in a way different from the law of descent and distribution. The division of household goods without regard to value, the taking into consideration in the distribution of the estate of certain advancements, the provision for erecting a monument and for the care of the cemetery, and the bequest of $10,000 to the children of his deceased daughter, were matters which he first provided for. The remainder of his estate, under the terms of his will, was to be distributed substantially in accordance with the law of descent and distribution. Had it not been for what we might speak of as preliminary matters or specific things he desired to be done, there was no purpose in his making a will, for the remainder of the property, in either event, went to his heirs at law. These specific things had been done before the appellant executed his mortgage to the bank. In fact, one of the quarter sections of the land had been sold and the proceeds divided. There was no longer any use for applying the fiction of equitable conversion. In the situation appellant then found himself he was the owner of an undivided one-sixth interest in the remaining quarter section of

land. That interest was subject to barter and sale. (See *Knutson v. Hederstedt*, 125 Kan. 312, 264 Pac. 41, and authorities there cited.) In such a situation he was at liberty to elect whether he would take his interest in the land, or his interest in the proceeds. Such an election is sometimes referred to as a reconversion (13 C. J. 885; 6 R. C. L. 1090). That appellant did elect to consider his interest in the form of land is clear from the fact that he mortgaged it, representing to be the owner of an undivided one-sixth; when suit was brought to foreclose the mortgage he filed an answer in which he specifically asserted his title in fee to an undivided one-sixth of the land, asked the court to recognize his title, and to adjudge him to have the rights of redemption provided by law, which the court did; and received the benefit of his interest in the land by a credit for the value thereof upon his indebtedness to the bank. In this way he actually sold and was paid for his interest in the land.

The trial court held that the mortgage to the bank was a valid, legal mortgage on appellant's interest in the property. Complaint is made of that holding. We approve it. At the time he made the mortgage there was no occasion for applying the doctrine of equitable conversion. He elected at that time to claim an interest in the property as distinct from an interest in the proceeds of the sale of it by the executors. He was at liberty to do this if his doing so did not affect adversely other parties who had an interest in the property. (13 C. J. 886.) On no principle of equity is it to his disadvantage to hold him to that election.

The trial court further held that the appellant by having represented in his mortgage to the bank that he was the owner of a definite interest in the property, having claimed in his answer in the foreclosure case to be the owner in fee of the definite interest, and having sought and obtained from the court a ruling based upon that claim, and having actually got the benefit of his claimed interest in the property in the payment of his indebtedness to the bank, he is now estopped from asserting he had no mortgageable interest in the property. We concur in that holding. The bank, in taking the mortgage, and the court, in entering its judgment, relied upon appellant's representation that he was the owner in fee of an undivided one-sixth of the real property. The will and the administration of the estate up to that time made such a claim tenable, if he desired to make it. He received pay for his claimed interest in the prop-

erty. He is not entitled to pay for it a second time. As tending to support the holding of estoppel see *Gray v. Crockett*, 35 Kan. 66, syl. ¶ 5, 10 Pac. 452, and *Westerman v. Corder*, 86 Kan. 239, 119 Pac. 868.

The judgment of the court below is affirmed.