No. 33,289

BEULAH ANDERSON, *Appellant*, v. ANNA C. WISE et al., *Appellees;*
(SAMUEL WISE et al., *Appellants*).

(62 P. 2d 825)

**Opinion filed December 8, 1936.**

*W. E. Holmes, Mark H. Adams* and *Charles E. Jones,* all of Wichita, for appellant Beulah Anderson. *Howard L. Baker,* of Wichita, as guardian *ad litem* for appellants Samuel Wise et al.

*George B. Collins* and *W. C. Attwater,* both of Wichita, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal involves the construction of the provisions of a will mainly in two particulars: (1) whether it authorizes an equitable conversion; and (2) whether the estates in remainder are vested or contingent.

Because the will in question provides for a sale of the property of the deceased after the termination of the life estate and the distribution of the proceeds thereof among his children, it is claimed an equitable conversion is authorized, and because of three references in the will to the issue of any of the children taking the share of the deceased parent, it is claimed that the remainder is not vested in the children but is a contingent remainder.

The action is brought by a granddaughter of the testator, making the life tenant, the trustees and all the children of the testator parties defendant and also twelve other grandchildren of the testator, all minors, as representatives of themselves and other grandchildren,.

born and unborn. These minors were represented in court by a regularly appointed guardian *ad litem*.

The widow of the testator was given by the will an estate for life or until her remarriage. This she regularly accepted in probate court. The remainder was given to the eleven children of the testator. The estate has been fully settled, all the debts have been paid and the executors discharged. The remaining property consists wholly of land in Rooks county. The widow has not remarried, and she and all the eleven children are living. The mortgages on the land have recently been increased by the trustees named in the will from $9,500 to $17,000 because of the unproductiveness of the farm land. The widow, the trustees and all eleven children, together with the wives or husbands of all that were married, have recently joined in the execution of an oil and gas lease on all of the land involved herein, and have executed assignments of the benefits accruing from such lease to the mortgagees until the mortgage indebtedness shall have been fully discharged. The parties to this action stipulated as to the above stated matters and the trial court accepted them and embodied them in the journal entry of judgment as findings of fact.

The prayer of the plaintiff and the answer of the twelve minor grandchildren is that their contingent interest in the estate and the distribution thereof be preserved, and that a trustee or trustees be appointed and authorized by the court to lease the real estate for oil and gas purposes, either separately or by joining in the lease already made, covering the known, unknown, contingent or non-contingent interest of plaintiff and these minor defendants and others, born and unborn grandchildren of the testator, and join under the order of the court in the assignment of the benefits of such lease to the mortgagees.

The widow, trustees and the eleven children filed answers and cross petitions denying any and every interest of any and all of the grandchildren, and praying that their title to the land involved be quieted against any and all such claim or claims of the grandchildren, born or unborn.

The trial court concluded and rendered judgment as follows:

"1. That the trust purported to be created under and by the terms of the last will and testament of S. K. Wise, deceased, is void *ab initio* and that there is no equitable conversion of said real property into personalty by reason thereof.

"2. That said real property, above described, is owned by and vested in the following parties in the following interests, to wit:

"Anna C. Wise, an estate for life or until remarriage, with vested remainder over upon the death or remarriage of Anna C. Wise, in (the eleven children, naming them).

"3. That the title to said real property of said persons, as adjudged in paragraph number 2 of this order, should be and the same is hereby quieted against Beulah Anderson (and the twelve minor grandchildren), individually and the class of persons, born or unborn, constituting the issue of the children of S. K. Wise, deceased, by said persons in being represented.

"4. That the costs herein be taxed to the plaintiff."

After the overruling of motions for new trial the plaintiff and the minor grandchildren, by their guardian *ad litem*, served a notice of appeal.

The portions of the will which call for construction in this appeal are as follows:

*"Item 2.* I hereby give, devise and bequeath to my beloved wife, Anna C. Wise, the use and proceeds of all my property, real and personal, which I may own or possess at the time of my death, wheresoever said property may be situate, to be used by her during her life or until her remarriage; the same is to be managed and held in trust by my executors hereinafter appointed for her own use and benefit.

"Should my wife, Anna C. Wise, remarry, then this provision in my will shall be null and void, and my property shall be divided among my children or their issue as hereinafter provided."

*"Item 5.* After the death of my beloved wife, or remarriage, I direct my executors hereinafter named to sell all my property, real, personal and mixed, and convert the same into cash, and to distribute the same in equal shares among my several children, to wit, Hattie R. Brandt, Arthur C. Wise, Bertha A. Wise, Roy H. Wise, Fred W. Wise, Sadie M. Ford, Myrtle A. Wise, Elmer A. Wise, Raymond D. Wise, Ernest R. Wise, and Clarence S. Wise, share and share alike. If anyone should be dead leaving issue, his or her issue is to take the share given to his or her parent."

*"Lastly,* I do hereby constitute and appoint my beloved wife, Anna C. Wise, and my daughter, Bertha A. Wise, and my son, Arthur C. Wise, executors and trustees of this my last will and testament, with full power and authority to make, execute and deliver any and all conveyances and other papers that may be necessary to carry out the provisions of my last will and testament according to the terms thereof . . ."

The other occurrence of issue in the will of the deceased is in reference to deducting the amounts of indebtedness to the testator for loans or advancements, the paragraph commencing as follows:

"In making the distribution among my several children or their issue . . ."

It will be observed in the first place that the will nowhere attempted to vest legal title in the executors or trustees as has been

done in specific terms in some of the cases cited. It at most gave them possession of the property and specifically authorized and directed them to sell the property and distribute the proceeds. It stated that the property "is to be managed and held in trust by my executors" for the use and benefit of the widow. The executors and trustees are also authorized to sell property and make conveyances. This is very different from being vested with title by the terms of the will.

The case of *Hart-Parr Co. v. Chambers*, 116 Kan. 136, 225 Pac. 1076, was of that kind. In *Bank v. Haid*, 97 Kan. 297, 155 Pac. 57, it was said that express words giving title to executors are not necessary to equitable conversion when such is the necessary effect and intention of the will. It was there held that an equitable conversion resulted from a direction to the executor to sell the property and divide the proceeds, although the executor was not given title. The beneficiaries in that case were not those who would have inherited in the absence of a will, and the passage of the estate as personalty was necessary to carry out the purposes of the testator. It was also held that the conversion took place at the date of the death of the testator and the real estate did not descend as such to the heirs. In the Chambers case it was stated:

"The general rule is that where a will directs that land be sold and the proceeds divided, an equitable conversion into personal property is regarded as taking place at the death of the testator, where that accords with his intention as gathered from the entire document. (13 C. J. 859-60, 869-71; 6 R. C. L. 1074-6.)" (p. 137.)

All the earlier Kansas cases cited on this question are discussed and distinguished in the Chambers case. In the case at bar, if there is an equitable conversion it must take place after the death or remarriage of the widow, which is contrary to the general rule above quoted.

Appellants cite a general rule from 13 C. J. 866, which is as follows:

"Where by a will a particular estate is created for life or a term of years, with directions that it shall be sold on the termination of such particular estate, and the proceeds distributed among certain designated beneficiaries, there is an equitable conversion of the remainder from realty into personalty."

This is followed by a number of modifications, one of which is an election by the beneficiaries to take the land, as is stated in the same volume at page 889, as follows:

"Where land is directed to be converted into money, or money directed to

be converted into land, all the parties entitled beneficially thereto have the right to take the property in its unconverted form, and thus prevent the actual conversion thereof, and this right to take the realty instead of the proceeds is not limited to beneficiaries who also hold the legal title."

This was done in the case at bar when all of the beneficiaries executed an oil and gas lease and also by their answers filed in this case.

In *Jones v. McMillan,* 124 Kan. 599, 261 Pac. 596, the provisions of the will were quite similar to those in this case, and it was held to be an equitable conversion and that the terms of the will could not reasonably be carried out other than by conversion, as one of the beneficiaries was not a natural heir, and besides one of the sons in contemplation of bankruptcy conveyed his interest in the land of the testator just before entering into bankruptcy.

Under the theory of election it was held in *Bank v. Murray,* 86 Kan. 766, 121 Pac. 1117, that—

"Where a will contains a provision purporting to devise real estate to several persons, followed by a direction that it be sold by the executor and that the proceeds be divided equally among them, the right with respect to such property acquired by one of them is subject to the lien of a judgment existing against him at the time of the testator's death." (Syl.)

A conversion which is not necessary to carry out the terms and purposes of the will cannot ordinarily be called equitable. In the case at bar there is no suggestion of necessity for converting the real estate into money in order to give each beneficiary named in the will his or her full share of the estate.

In *Schneider v. Schneider,* 135 Kan. 734, 12 P. 2d 834, the doctrine of equitable conversion is definitely expressed and applied in the first paragraph of the syllabus.

"The theory of equitable conversion by which, for certain purposes, real estate is considered as personal and personal estate as real, and transmissible and descendable as such, is a fiction invented by courts of equity to promote justice in carrying out the purposes of the testator or settlor when such a theory is necessary to accomplish that purpose. It should not be applied when the necessity for it does not exist."

Since there is no necessity whatever in the case at bar for an equitable conversion, and since there has been a unanimous election to take the real property without conversion, both by the execution of the oil and gas lease and by the pleadings in this case, we find no error in the first conclusion of the trial court to the effect that the trust purported to have been created by the will is void and there

is no equitable conversion of the real property into personalty by reason of the terms of the will.

The appellants insist that even if it be held that equitable conversion does not apply, that the will created a contingent remainder in the children and in their children, urging an alternative contingent remainder over to the issue of such children. The only possible contingency about the life of the widow is the extent of that life. As to remarriage, it may or may not occur, which is an uncertainty of fact as well as to time of occurrence. As far as the issue of the children is concerned there will necessarily be another contingency, that is, the death of the parent during the life of the widow or prior to her remarriage. But the question of the remainders being vested or contingent is solved mainly by the intention of the testator as expressed in the will, as to when the remainders are to become vested, at the death of the testator or at the death or remarriage of the life tenant.

It is said in 69 C. J. 597:

"In accordance with the rules heretofore stated, a clearly manifested intention as to the time of vesting will prevail over the rules of construction in favor of vesting, but the law favors the early vesting of testamentary gifts. If a contrary intention does not clearly appear an interest will always be construed as vested rather than contingent, and to vest at the earliest possible time consistent with the testator's intention, so that if a contrary intention is not manifest the interest will usually be regarded as vesting immediately upon the testator's death."

This same principle was expressed in *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, as follows:

"In a devise to a wife for life, with remainder to the legal heirs of the testator, to create a contingent remainder the intent so to do must be expressed in words so plain that there is no room for construction.

"No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." (Syl. ¶¶ 1, 2.)

The term "issue" was contained in the will in the case of *Hammond v. Martin*, 100 Kan. 285, 164 Pac. 171, although the child in that case died without issue, and the court held the remainder was vested in the child from the death of the testator and therefore went to the spouse.

In *Stevenson v. Stevenson*, 102 Kan. 80, 169 Pac. 552, the testator gave a life estate to his wife and then an equal interest to his three sons, and then provided that "in case any of my children aforesaid shall die in their mother's lifetime or in my lifetime, leaving issue

or descendants, I direct that his share shall not lapse but shall be paid to such descendants in equal proportions," and it was there held:

"Where a testator bequeaths a life estate in his property to his widow and the remainder undivided to his sons, share and share alike, the sons acquire a vested remainder in the property, and they may sell and dispose of their undivided interests, subject to the rights of the widow under her life estate."

"Where a life tenancy and remainders are carved out of an estate by will, and the remaindermen are *in esse*, definitely ascertained, and nothing but their death before the termination of the life tenancy can defeat their title, the remainders thus created and bestowed by the will are vested absolutely in the remaindermen." (Syl. ¶¶ 1, 3.)

In the case of *Purl v. Purl*, 108 Kan. 673, 197 Pac. 185, the court held that the remainder was contingent until the death of the life tenant, but the provisions of that will went further than the giving of the child's share to the issue. It was where the father gave property to his son, Fillmore, "to have during his life and at his death it goes to his children, if he has any living; if not, it goes to his brothers and sisters or their heirs." It was, however, said in the opinion that—

"A will speaks from the time of the testator's death. A remainder will be regarded as vested rather than contingent, unless such an interpretation would contravene the testator's expressed intention." (p. 675.)

To the same general effect are the decisions in the cases of *Markham v. Waterman*, 105 Kan. 93, 191 Pac. 621, and *McLean v. Stanley*, 134 Kan. 234, 5 P. 2d 839.

As to the provision concerning remarriage, it is more nearly an acceleration of the enjoyment of a vested remainder than a contingency. It was held in *Klingman v. Gilbert*, 90 Kan. 545, 135 Pac. 682:

"A devise having been made to a widow for life or until her remarriage, a provision of the will disposing of the property upon her death is held to apply also in case of her marriage, no other disposition having been expressly provided, and this appearing to be in accordance with the purpose of the testator as gathered from the entire instrument." (Syl. ¶ 1.)

It was further said in the opinion:

"The question for determination therefore is, When would an estate vest in the children of one of the sons under the circumstances stated? If the actual and obvious purpose of the testator was one which the law does not permit to be carried out, the provision of the will must fail. But if the language is ambiguous, the courts incline towards a construction favorable to the early vesting of an estate in the children and against a construction that would defeat the will." (p. 549.)

We find no ambiguity in the provisions of the will, nor do we find the creation of any contingency as to the remainders in the children of the testator. The remainders vested under the terms of the will at the death of the testator, with the possession or enjoyment of the estates postponed during the life of the widow, unless such possession and enjoyment might be accelerated by the remarriage of the widow.

We further hold that the plaintiff and the defendant minors, all grandchildren of the testator, have no contingent interest in the remainder and that the title of the holder of the life estate and the vested remainders of the children of the. testator should be quieted against any claim of any and all grandchildren of the testator whether born or unborn.

Appellant very properly raises the objection to an earlier judgment being *res judicata* against the grandchildren to which action they were not parties. A former judgment was mentioned in the findings, but neither the conclusions of law nor the judgment in the case was attempted to be based on such adjudication. We find no error in the conclusions or judgment.

The judgment is affirmed.