No. 34,176

The Union Electric Company, *Appellant*, and Mrs. Charles C. Brown, as Administratrix of the Estate of Charles C. Brown, Deceased, and all others similarly situated, *Defendants*, v. Maud Brown, as an Individual, and as Administratrix under the Last Will and Testament of Cleyson L. Brown, Deceased, and as Trustee, etc., *Appellee.*

(87 P. 2d 521)

Opinion filed March 4, 1939.

*B. F. Napheys, Jr., Harold Bolton, Matt Guilfoyle* and *Thornton D. Scott,* all of Abilene, for the appellant.

*Arthur Hurd* and *John M. Rugh,* both of Abilene, for the appellee.

The opinion of the court was delivered by

Allen, J.: This action was to obtain a declaratory judgment construing a will, and to define the rights of various parties claiming thereunder. The appeal is from an order sustaining a demurrer to the petition.

Cleyson L. Brown died testate, November 25, 1935. The defendant, Maud Brown, is administratrix with the will annexed of his estate; she is also the duly appointed trustee under his will.

The plaintiffs are creditors of the estate of Cleyson L. Brown. The action is brought by plaintiffs on behalf of themselves and for all other creditors whose claims have been allowed against the estate of Brown.

Maud Brown, widow of Cleyson L. Brown, duly elected to take under the will. She is the principal beneficiary under the will.

The petition alleges that Maud Brown as trustee under the will has collected and received the sum of $33,369.83 in cash "as revenues or proceeds from real estate owned by said Cleyson L. Brown at the time of his death, and included in the property covered by paragraph second of his said last will and testament, which said cash she, as such trustee for the beneficiaries and legatees named in said will, . . ." claims the right to hold and retain, and which she, as administratrix with the will annexed, has failed and refused to account for and distribute pro rata to plaintiffs and other creditors similarly situated.

The defendant demurred to the petition on the ground it did not state facts sufficient to state a cause of action and because the court had no jurisdiction of the subject of the action. The demurrer was sustained. The pertinent clauses of the will are:

"First. I direct that all my just debts and funeral expenses be paid by my executor.

"Second. I bequeath and devise to my executor hereinafter named, upon trust, all of my property, both real and personal, to be held in trust for the beneficiaries under this my last will and testament, with full power to hold, manage, sell, transfer and convey the same; to reinvest the principal and income thereof from time to time, and to do every act and thing to effectually execute the trust and bequests hereunder created, and carry out the directions of this will; giving and granting to said executor full power to make, execute and deliver any and all deeds, or other instruments of transfer necessary to execute such trusts and bequests in accordance with the directions of this will.

.   .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Ninth. In the event that my estate shall not be sufficient to pay the incomes and bequests above set out, then such beneficiary shall receive their pro rata proportion remaining after my just debts and expenses have been paid."

Various legacies were given by the other clauses in the will.

The action was brought for the purpose of subjecting funds in the hands of a testamentary trustee to the payment of the debts of the testator. The fund consists of rents from real estate owned by the testator at the time of his death, and accumulated from the time of his death until June 30, 1937, the effective date of chapter 219 of the Laws of 1937.

Under the law of this state the fund in question belongs to the devisees under the will, unless the will otherwise provides. (*Nagel v. Davison,* 124 Kan. 230, 257 Pac. 962.) The land was devised to the executor in trust to carry out certain purposes specified. If the will created a trust for the payment of his debts, the plaintiffs as creditors and beneficiaries under the trust so created should prevail.

The contention of plaintiffs before this court is based on the doctrine of equitable conversion. Under that doctrine where the testator has positively directed his real estate to be sold and distributed as money, equity will consider the land as personal property. It is not a rule of right, hence it is not one which can be invoked under all circumstances. (*Schneider v. Schneider*, 135 Kan. 734, 12 P. 2d 834.)

The question of conversion is a question of intention, and the question is, Did the testator by the terms of his will manifest an intention that his lands should be converted into money at all events before distribution? Here, the executor as trustee was empowered to sell and convey the land, but there was no imperative direction that he should sell. While he was given the power, he was not obliged to exercise it, and under the rule in this state there was no conversion of the land into money. (*Schneider v. Schneider*, supra; *Anderson v. Wise*, 144 Kan. 612, 62 P. 2d 825; *Koelliker v. Denkinger*, 148 Kan. 503, 83 P. 2d 703.)

Plaintiffs argue that as under paragraph nine of the will the beneficiaries are to receive only their pro rata proportion remaining after the debts are paid, the will makes it mandatory to convert the property into money and distribute the assets so collected to the creditors. In effect the contention is that the assets of the estate constituted a trust fund for the payment of the debts of the testator. Does the direction to pay debts constitute the personal representative a trustee?

In 1 Bogert on Trusts, section 12, it is said:

"At present both realty and personalty are liable for the payment of the testator's debts. A mere direction to pay debts will not be construed to make the executor a trustee, unless the intent is explicitly stated. If the property is given to the executor in trust to pay the debts in the manner prescribed by statute, the executor will not be a trustee, but will pay the debts as executor. If, however, the executor is made a trustee to apply the property in a manner different from that which would otherwise apply, and the intended trust is not in fraud of creditors or otherwise prejudicial to them, the executor will become a true trustee. . . ."

See 2 Perry on Trusts, section 559.

The will before us does not direct the payment of debts out of a particular fund. It merely says what the law says, that the debts shall be paid. At common law, the personal estate only of a deceased person was liable for his debts, unless they were debts by

specialty or matter of record. No recourse could be had to the real estate, although the personal property was wholly insufficient. But real estate could be devised in trust to pay debts from which it was otherwise exempt. Courts favored these trusts, as it was considered just and equitable that a man's debts should be paid. Mr. Jarman says: "It seems to be generally admitted that the courts have allowed their anxiety to prevent moral injustice by the exclusion of creditors 'and that men should not sin in their graves' to carry them beyond the limits prescribed by the established general principles of construction." (2 Jarman on Wills, 6th ed., p. 535.)

The policy of our law is to promote the speedy winding up of the estates of decedents. To that end our nonclaim statute, G. S. 1937 Supp. 22-702, compels creditors to exhibit their .demands within one year, and that such demands shall be forever barred unless exhibited within that time. But the statute does not run against the beneficiary of a trust until the trust is repudiated by the trustee. (*Hinze v. Hinze,* 76 Kan. 169, 90 Pac. 762.) To allow a mere direction by the testator that his debts shall be paid to be translated into a trust would render the estate liable for unknown claims for an indefinite period. Our nonclaim statute was not enacted merely to protect the estate from neglected and dormant claims, but was intended for the benefit of the heirs, devisees, legatees and distributees.

In an early case, and perhaps the leading case in this country, *Carrington & Co. v. Manning's Heirs,* 13 Ala. 611, the testator in his will provided: "It is my will that (certain lands) be sold, and the proceeds applied to the payment of legacies hereafter bequeathed, and the discharge of my debts." The court said:

"The construction contended for by the plaintiff's counsel would make it difficult, if not impossible, for an heir or devisee, or a purchaser from either, where the will, according to the common law, made the real estate subject to the testator's debts, to act with safety in the sale or improvement of the estates received by them under the will; lest debts of which they had no means of ascertaining, and of which the negligence of the creditor has prevented the payment, should afterwards be enforced. If, in the present case, a trust can be established, it would be hazardous for a testator to give any directions in respect to his land in connection with his debts, if he did not intend to take them out of the course of administration which the legislature has prescribed, or to arrest the operation of the act of limitations, and dispense with the statute of nonclaim. Under, perhaps, a majority of wills in this country, the administration would be disturbed, trusts would be created involving responsibilities and consequences which testators never contemplated, and procrastinating to the prejudice of heirs and devisees, the settle-

ment of estates to an indefinite period. The duties of an executor, instead of being controlled by the statutes which apply to the estates of deceased .persons, would be regulated by principles recognized by the English chancery, under a state of the law altogether different from ours, and when, too, we have studiously endeavored to avoid the very evils that superinduced them. Our policy is decidedly adverse to the origination of trusts by implication for the payment of debts, not only because it is unnecessary, but because the character of the executor is changed to a mere equitable trustee, not accountable to the orphans' court, and whose default in that character, perhaps his administration bond would not cover." (p. 634.)

In the case before us the question of equitable conversion is involved only as showing the intent of the testator to create a trust in favor of the creditors. We are clear that a trust for the payment of debts was not created. We, of course, do not intimate that a trust for the payment of debts. could not be created where the language is express and the intention is manifest.

. The judgment is affirmed.