No. 34,986

LILLIAN C. BELDEN (Revived in the Name of W. S. BELDEN, Administrator of the Estate of Lillian C. Belden, Deceased), *Appellant,* v. JESSE CASHMAN and NANCY C. CASHMAN (MYRON CASHMAN, Executor of the Last Will and Testament of Hettie J. Cashman, Deceased), *Appellees.*

(109 P. 2d 131)

Opinion filed January 25, 1941.

*J. M. Johnson* and *John L. Gernon,* both of Hiawatha, for the appellant.

*Roy V. Nelson* and *Walker F. Means,* both of Hiawatha, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: This case presents the question whether under the doctrine of equitable conversion land devised to the defendant Jesse Cashman is to be considered as personal property. The plaintiff secured a judgment against the defendants and caused execution to issue and a levy to be made thereunder. A motion to quash the execution and to enjoin the sale of the real estate levied upon was sustained by the court. The appeal is from this order and ruling of the court.

The interest of the defendant Jesse Cashman in the land levied upon was acquired under the will of his mother, Hettie Jane Cashman. The question presented must be resolved by a construction of that instrument, and the codicils thereto.

The will provided:

"Second: Inasmuch as my husband, Leander J. Cushman, gave to our son Jesse C. Cashman, the sum of one thousand dollars; and I have given to my son Lee H. Cashman the sum of one thousand dollars; and I am obligated to pay the sum of two thousand dollars for my son George O. Cashman; and

my sons Cary A. Cashman and Myron E. Cashman have not received from me any sum of money; it is my will and I hereby direct that there shall be within a reasonable time after my death, or more properly speaking within one year after the probating of this my will, and for the purpose of fully equalizing the sums paid and to be paid; my executor hereinafter named shall pay to Jesse C. Cashman the sum of one thousand dollars; to Lee H. Cashman the sum of one thousand dollars; to Cary A. Cashman the sum of two thousand dollars; and to Myron E. Cashman the sum of two thousand dollars. In case George O. Cashman at the time of my death is owing me any unpaid interest which may be due by reason of the two thousand dollars now advanced to him, I direct said sum to be made a charge against him and added to the assets of my estate, and deducted from his share of any distributive share which may be due to him.

"Third: Subject to the payments of the sums directed to be paid by the items one and two, I give, devise and bequeath to my five sons heretofore herein named, all the remainder of my estate, real, personal and mixed, share and share alike, as follows, to wit:

"To Jesse C. Cashman an undivided one-fifth part or share.

"To Lee H. Cashman an undivided one-fifth part or share; provided, that the said one-fifth set off to him shall be by my executor hereinafter named invested as to said amount in a home for said Lee H. Cashman for and during his natural life; the remainder to go to his children, one-half, and to his wife one-half thereof. The selection of said home to be made by said executor assisted by one of the brothers of said Lee H. Cashman.

"To Cary A. Cashman an undivided one-fifth part or share. To Myron E. Cashman an undivided one-fifth part or share.

"To George O. Cashman an undivided one-fifth part or share; provided, that the said one-fifth set off to him shall be by my executor hereinafter named invested as to said amount in a home for said George O. Cashman for and during his natural life; the remainder to go to his children; provided, that in the event of the death of any one of his children, then his surviving child or children shall inherit the share of said deceased child, and in case all of the children of said George O. Cashman shall die prior to his death, then the home so purchased shall revert and go to the surviving brothers of said George O. Cashman, or their heirs. The deeds to the homes purchased for my sons Lee H. Cashman and George O. Cashman shall be made to them respectively, for and during the natural life of each, with the remainder as above provided as to each of them.

"Fourth: For the purpose of disposing of my real estate to pay the bequests provided for in items two and three, I hereby direct and authorize my executor hereinafter named, to grant, bargain, sell and convey by a good and sufficient deed or deeds, all the real estate as a whole or in parts, by me possessed at the time of my death; without any order of any court having jurisdiction, provided, that before offering said real estate for sale he shall have and cause the same to be appraised by three disinterested householders of Brown county, Kansas, said appraisers to be appointed by the probate judge of Brown county, Kansas; and I direct that my son, Myron E. Cashman, shall have the preference of buying what is known as the home place in Powhattan

township, Brown county, Kansas, provided he pay the price. The sale of said lands shall be made within one year after the probating of this my last will and testament."

The first codicil to the will provided:

"First: Whereas, in my said last will and testament I did give, devise and bequeath to my son Lee H. Cashman an undivided one-fifth part or share; provided, that the said one-fifth set off to him shall be by my executors hereinafter named invested as to said amount in a home for said Lee H. Cashman for and during his natural life; the remainder to go to his children one-half, and to his wife one-half thereof. The selection of said home to be made by said executor assisted by one of the brothers of said Lee H. Cashman. And I desire to change said bequest in that I direct that one-half shall go to his wife, and one-fourth to his adopted child, and the remaining one-fourth to revert to my said estate.

"Second: And in the fourth item of my said last will and testament I desire to make the following addition to said item: I desire that my son Myron E. Cachman shall have the use of the home place for ten years, with the understanding that he shall keep the place in good repair and all taxes are to be paid by him; and at the expiration of said ten years, said Myron E. Cashman shall have the preference of buying the said home place, described as the south half of the northeast quarter of section 34, township 3, range 15, and the west half of the northwest quarter of section 35, township 3, range 15, Brown county, Kansas, paying a reasonable price for the same."

In the second codicil the testatrix listed certain advances made to Jesse C. Cashman and his family, which amounts were to be deducted from his share of the estate. Certain other modifications were made as to the share of another son not here material.

Under paragraph two, legacies are bequeathed to the children in various amounts. Under paragraph three, the remainder of the estate is divided into shares—the defendant Jesse C. Cashman to receive "an undivided one-fifth part or share." Specific real estate was not given to any beneficiary under the will.

Paragraph four recites that "for the purpose of disposing of my real estate to pay the bequests provided for in items two and three, I hereby direct and authorize my executor" to sell and convey "all the real estate as a whole or in parts, by me possessed at the time of my death." The command is imperative, and imposes a duty on the executor to sell the land and convert the land into money. Some of the children are to receive their shares in cash. The executor is directed to invest the shares of two of the sons in homes for them and the will specifies they are only to have life interests in such homes.

In the early case of *Craig v. Leslie et al.*, 3 Wheat. 563, 4 L. Ed. 460, it was necessary to determine whether the property disposed of by the testator was real or personal property. Washington, J., speaking for the court, said:

". . . The only inquiry, then, which this court has to make, is, whether the above clause in the will of Robert Craig is to be construed, under all the circumstances of this case, as a bequest to Thomas Craig of personal property, or as a devise of the land itself.

"Were this a new question, it would seem extremely difficult to raise a doubt respecting it. The common sense of mankind would determine that a devise of money, the proceeds of land directed to be sold, is a devise of money, notwithstanding it is to arise out of land; and that a devise of land, which a testator by his will directs to be purchased, will pass an interest in the land itself, without regard to the character of the fund out of which the purchase is to be made.

"The settled doctrine of the courts of equity correspond with this obvious construction of wills, as well as of other instruments, whereby land is directed to be turned into money, or money into land, for the benefit of those for whose use the conversion is intended to be made. In the case of *Fletcher v. Ashburner* (1 Bro. Ch. Cas. 497) the master of the roll says, that 'nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted, and this, in whatever manner the direction is given.' He adds, 'the owner of the fund, or the contracting parties, may make land money, or money land. The cases establish this rule universally.' This declaration is well warranted by the cases to which the master of the rolls refers, as well as by many others. (See *Dougherty v. Bull*, 2 P. Wms. 320; *Yeates v. Compton*, Id. 358; *Trelawney v. Booth*, 2 Atk. 307.)

"The principle upon which the whole of this doctrine is founded is, that a court of equity, regarding the substance, and not the mere forms and circumstances of agreements and other instruments, considers things directed or agreed to be done, as having been actually performed, where nothing has intervened which ought to prevent a performance." (p. 577.)

In *Hart-Parr Co. v. Chambers*, 116 Kan. 136, 225 Pac. 1076, it was stated:

"The general rule is that where a will directs that land be sold and the proceeds divided, an equitable conversion into personal property is regarded as taking place at the death of the testator, where that accords with his intention as gathered from the entire document. . . ." (p. 137.)

The principle thus announced has often been expressed by this court. (See *Schneider v. Schneider*, 135 Kan. 734, 12 P. 2d 834; *Koelliker v. Denkinger*, 148 Kan. 503, 83 P. 2d 703.)

Express words giving title to the executor are not essential to

equitable conversion when such is the necessary intention and effect of the will. (*Bank v. Haid,* 97 Kan. 297, 299, 155·Pac. 57; *Jones v. McMillan,* 124 Kan. 599, 261 Pac. 596.)

In the will before us the legacies in paragraph two cannot be paid nor can the homes provided for in paragraph three be purchased as directed until the real estate owned by the testatrix at the time of her death is sold. As the duty to sell is imperative, we think the interest of the defendant Jesse Cashman was personal property and that he had no interest in the land in question which was subject to attachment. (*Hart-Parr Co. v. Chambers,* supra.)

The judgment is affirmed.