No. 35,039

S. H. ALEXANDER and EMMA MOREHEAD, Trustees of the Estate of Carl Goellert, *Appellees*, v. HERMAN GOELLERT, OTTO H. GOELLERT and ESTHER SEWELL, *Appellants;* IDA HAND et al., *Defendants.*

(109 P. 2d 146)

Opinion filed January 25, 1941.

*E. H. Benson,* of Colby, for the appellants.

*E. F. Beckner* and *Leon N. Roulier,* both of Colby, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Plaintiffs, trustees of the estate of Carl Goellert under the will of his mother, brought this action to have the will construed with respect to their right to mortgage or sell certain real property and give full title thereto. Defendants claimed the fee of the real property subject to the life estate of Carl Goellert. The trial court construed the will in harmony with the views of plaintiffs. Defendants have appealed.

Franc Goellert and his wife, Imkea Goellert, settled in Thomas county in the homesteading days of the early '80s. By their thrift and industry they accumulated and improved 1,760 acres of land, most of which is good farm land, and reared a family of six children, all of whom are living. One of the children, Carl Goellert, now about 48 years of age, when a small child had infantile paralysis

which prevented him from attending school and left him a cripple. Franc Goellert died many years ago. Some years later his widow married Hans Handevidt, whose death preceded hers. On March 1, 1935, she executed her will, which was duly admitted to probate after her death in December, 1936. By her will she directed that all her just debts and funeral expenses be first paid, made gifts of certain of her personal property to named persons and directed that all her other personal property and certain real property in Los Angeles be converted into cash by her executor and the money so received be deposited in a named bank "as a trust fund for my son Carl Goellert, whom I recognize to be incompetent to manage and direct his business affairs. I hereby nominate and appoint Emma Morehead and S. H. Alexander, to be trustees of such fund and of the estate of the said Carl Goellert, and I hereby authorize and empower said trustees to use such estate for the living expenses and care of my son Carl Goellert. I further order and direct that such trustees shall have the management and control of the real estate hereinafter devised to my son Carl Goellert, and that all income including rents and profits realized from such real estate be placed in the trust fund hereinbefore created."

Later in the will provision was made for the disposition of any part of the trust fund remaining upon the death of Carl Goellert. The paragraphs of the will principally to be construed, read:

"Fourth: I give, devise and bequeath to my son Carl Goellert, a life estate in and to the north half (N½) and the southeast quarter (SE¼) of section eighteen (18) and the west half (W½) of section seventeen (17) all in township seven (7), range thirty-five (35), Thomas county, Kansas, and that upon the death of the said Carl Goellert, the said real estate is to descend to my children, Otto H. Goellert, Herman Goellert, Ida Hand and Esther Sewell, in fee simple, share and share alike.

"Fifth: I further authorize and direct the trustees of Carl Goellert, hereinbefore created, the right to sell or encumber the real estate of my son Carl Goellert, but only upon the express provision that the personal property and money, in the trust fund created for my son Carl Goellert, be exhausted, and that such encumbrance or sale of real estate be essential for the proper keep and care of such son."

S. H. Alexander was nominated executor of the will. He duly qualified as such, the estate was administered, and the administration closed in December, 1937. The money constituting the trust fund was turned over by him to the trustees. Thereafter the trustees mortgaged for $1,000 each two of the quarter sections of land described in the fourth paragraph of the will, the mortgages con-

taining full convenants as to title. On learning of this the appellants here objected and asked plaintiffs to have the mortgages released and rewritten so as to cover only the life estate of Carl Goellert in the land. This request was refused, and this action followed.

The testatrix had her will written by her attorney. As so written it contained devises to her competent children of specific real property. Before the will was executed she concluded to make deeds to those children for the respective tracts of land devised to them and to omit those devises from her will. She went to her banker, S. H. Alexander, and told him she wanted to make deeds in lieu of those devises. He drew the deeds for her, which she executed, and also retyped the will, omitting those devises. As retyped the fourth and fifth paragraphs were not changed from the form in which they had been written.

By the fourth paragraph of the will the testatrix devised to her son Carl only a life estate in and to the 800 acres of land described in that paragraph and devised the remainder, upon the death of Carl, to her four children named. By this paragraph the four children, upon the probate of the will, had a vested remainder interest in the property. In other words, they had the fee title to the land, subject only to the life estate of Carl.

Vested remainders, for the purpose of taxation, are defined by our statute (G. S. 1935, 79-1504) as follows:

"Vested estates in remainder, as used herein, shall include all estates where the remainderman, being alive, would take at once if the life tenant were to die."

The same rule applies to the construction of wills. In *Stevenson v. Stevenson*, 102 Kan. 80, 169 Pac. 552, it was held:

"Where a life tenancy and remainders are carved out of an estate by will, and the remaindermen are *in esse*, definitely ascertained, and nothing but their death before the termination of the life tenancy can defeat their title, the remainders thus created and bestowed by the will are vested absolutely in the remaindermen." (Syl. ¶ 3.)

See, also, 21 C. J. 979; *Shehi v. Williamson*, 122 Kan. 118, 250 Pac. 1075; *McLean v. Stanley*, 134 Kan. 234, 5 P. 2d 839; *Anderson v. Wise*, 144 Kan. 612, 62 P. 2d 825, and authorities there cited.

Since, in construing a will, consideration must be given to all parts of it (see *Markham v. Waterman*, 105 Kan. 93, 95, 181 Pac. 621, and cases there cited), we look to see if the respective devises in the fourth paragraph are in any way modified by other provisions of the will. The only part of the will which it is contended has that

effect is the fifth paragraph. Appellees argue that the fifth paragraph of the will, wherein the trustees of Carl, under circumstances named, are authorized and directed "to sell or encumber the real estate of my son, Carl Goellert," enlarges the devise of the life estate made to Carl in the fourth paragraph of the will into a fee simple title. We think the language used is not open to that interpretation. A life estate in land is real property. (G. S. 1935, 77-201, ¶ 8; *Strom v. Wood*, 100 Kan. 556, 164 Pac. 1100.) The owner of a life estate may sell (G. S. 1935, 67-205) or encumber it, and if the life estate is in nonexempt real property it may be attached for his debts or levied upon by execution, and in the event of his bankruptcy would pass to his trustee. (See 21 C. J. 938, 940; *Bank v. Murray*, 86 Kan. 766, 121 Pac. 1117; *Markham v. Waterman*, 105 Kan. 93, 97, 181 Pac. 621; *McCartney v. Robbins*, 114 Kan. 141, 217 Pac. 311.) The very idea of a life estate presupposes a fee existing elsewhere than in the tenant for life. The owner of a life estate has no power to destroy the remainderman's interest in the property. (*Carlyle v. Pee*, 125 Kan. 727, 265 Pac. 1113.) The only real estate which the testatrix devised to her son Carl was the life estate in the 800 acres described in the fourth paragraph, and when by the fifth paragraph she authorized her trustees, in certain contingencies, to "sell or encumber the real estate of my son Carl," it seems clear that the reference could be to nothing but the life estate devised to him by the fourth paragraph of the will.

Appellees argue that it is obvious from the will the testatrix desired her crippled son should have adequate care. It may be conceded that was her purpose, but she provided for it in a definite way, which no doubt she thought would be ample.

At the trial, over the objection of defendants, the witness S. H. Alexander was permitted to testify that on the occasion when the will was executed the testatrix said that she expected to leave enough for Carl to support him all his life, and she set up this 800 acres of land and said it didn't matter to her if it took the entire 800 acres, plus the income, she wanted it to go to Carl. If such a statement was made Mr. Alexander should have seen to it that it was embodied in the will. The testimony was incompetent and should not have been received, and if received should not have been considered. This is not a suit to reform a will; in fact, courts have no authority to reform wills. (*Hoover v. Roberts*, 144 Kan. 58, 58 P. 2d 83, and cases there cited.) The rule is well settled that ex-

trinsic evidence may be received to show the situation of the testatrix, the status or location of her property, the relationship of beneficiaries named in the will, and things of that character (*Phillipson v. Watson*, 149 Kan. 395, 87 P. 2d 567), but such evidence is not proper to be received to change the meaning of the language used in the will. (*Guthrie v. Guthrie*, 130 Kan. 433, 286 Pac. 195.) The same rule applies to deeds. (*Miller v. Miller*, 91 Kan. 1, 136 Pac. 953.)

Plaintiffs act only in the capacity of trustees for Carl Goellert. He had only a life estate in the 800 acres described in the fourth paragraph of the will. Plaintiffs could sell or encumber only the estate of Carl Goellert, hence they had no authority to sell or mortgage more than his life estate in the land. Mortgages or deeds which they have executed, or may execute for this land, encumber or convey only the life estate of Carl Goellert.

Some matters are discussed in the briefs which are not appropriate in an action to construe the will. We find no necessity of discussing other matters argued. From what has been said the judgment of the court below must be reversed. It is so ordered.

ALLEN, J. (dissenting): The will is to be read as an entirety in the light of the circumstances of its formulation. The testatrix was survived by six children—three sons and three daughters. The son Carl mentioned in the fourth paragraph of the will was stricken with infantile paralysis when he was three or four months old. He is now forty-six or forty-seven years old. One of his sisters testified: "He has been a great care all his life and he requires a lot more care, a lot more than one realizes." He can walk with a cane or by holding on to something, and has been in that condition since birth; he gets around with a wheel chair; his speech is impaired and it is hard to understand him when he talks; he eats at the table with the family but has some trouble in eating; he shaves himself and takes his bath with some difficulty.

The testatrix owned more than 1,700 acres of land. The following stipulated in the record shows the manner in which she attempted to provide for four of her children:

"It is stipulated and agreed by and between the parties hereto that at the time of the making of the will involved in this lawsuit that the said testatrix, Imkea Goellert Handevidt, deeded to her son, Otto Goellert, a half section of land, and to her son, Herman Goellert, a half section of land, and to her daughter, Ida Hand, a quarter section of land, and to her daughter, Esther

Sewell, a quarter section of land, and that these deeds were delivered to the grantees immediately after the death of the said Imkea Goellert Handevidt."

The provision made for the crippled child, Carl, is found in the following provisions of the will:

"Fourth: I give, devise and bequeath to my son Carl Goellert, a life estate in and to (description), and that upon the death of the said Carl Goellert, the said *real estate* is to descend to my children, Otto H. Goellert, Herman Goellert, Ida Hand and Esther Sewell, in fee simple, share and share alike. (Italics inserted.)

"Fifth: I further authorize and direct the trustees of Carl Goellert, hereinbefore created, the right to sell or encumber the *real estate* of my son Carl Goellert, but only upon the express provision that the personal property and money, in the trust fund created for my son Carl Goellert, be exhausted, and that such encumbrance or sale of *real estate* be essential for the proper keep and care of such son." (Italics inserted.)

The argument of appellants runs thus: Under paragraph four of the will, Carl was given a life estate in 800 acres; under paragraph five, the trustees were authorized to sell or encumber the real estate of Carl; a life estate is real estate, therefore the trustees were only authorized to sell or mortgage the life estate of Carl. These contentions seem to have been adopted in the majority opinion. I am unable to agree.

It is asserted that a life estate in lands is real estate. This must be admitted. Under the common law, a life estate was a freehold estate, and all freehold estates were classified as real property.

Nor can it be disputed that paragraph four creates a vested remainder in his brothers and sisters there named. All this is obvious.

The question, however, is whether the vested remainder in the children of the testatrix and the life estate in Carl was liable to be divested by the power given to the trustees under paragraph five. That a vested remainder may be divested by the exercise of a power was recognized in *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, cited in the majority opinion. (See, also, *Faris v. Nickel,* 152 Kan. 652, 107 P. 2d 721.)

The opinion of the court seems to turn on the meaning of the words "real estate" in paragraphs four and five. If we translate these words as used in paragraph four to mean "life estate," it renders that paragraph utterly void of meaning, for then it would read: "the said life estate is to descend to my children," etc. It is submitted that as there used the testatrix referred to the land in which she had given her son Carl a life estate. Did she use the same words in a different sense in paragraph five? Certainly not.

The intention of the testatrix is not to be found in a mechanical construction of words. We must look to the circumstances, the problems that confronted the testatrix.

As I read this record, this mother was attempting to guard the future of her stricken child. In normal times the income from 800 acres of land might be sufficient. But suppose droughts and dust storms should come? Suppose the income should fail—was the child to become a charge on the other children or an object of public charity?

It is apparent from the record that the testatrix was a thrifty woman and had good business judgment. She knew that a mere life estate in her crippled child could not be sold at an adequate price, and she also knew that no prudent investor would loan money upon a title that would cease upon his death. Therefore, she appointed trustees for Carl and gave them power and authority to sell or mortgage the 800 acres of land—to do all things necessary for the care and support of the stricken child. It seems clear that the words "real estate" in the fifth item had the same meaning as in the fourth item. It was a mere phrase to describe the fee simple estate in the 800 acres of land in which she had given Carl a life estate.

Another objection to the majority opinion is that it reaches no practical end. The complaint seems to be made that the trustees have violated their trust. The answer is that our district courts are courts of general equitable jurisdiction. The doors of the court are open. Trusts are the children of equity, and a court of equity will guard the rights of a beneficiary. An unworthy trustee will be removed. It was not necessary to destroy the interest of the child to carry out the dominant intention of the testatrix.